PEOPLE v. JEROME I. SMITH

1. WEAPONS—CONCEALED WEAPONS—AUTOMOBILES—PRESENCE.
   The concealed weapons statute does not punish one who is
   merely present in a car when a pistol is found (MCLA
   § 750.227).

2. WEAPONS—CONCEALED WEAPONS—PARTICIPATION.
   Participation in the act of carrying a concealed weapon must
   be shown in order to obtain a conviction under the concealed
   weapons statute (MCLA § 750.227).

3. WEAPONS—CONCEALED WEAPONS—PARTICIPATION.
   Statement by a defendant that indicates a common intent and
   participation on the part of all the men in a car to carry
   weapons in the car is clear and convincing evidence that
   there was knowing participation by another defendant in
   the commission of the crime (MCLA § 750.227).

4. CRIMINAL LAW—JURY TRIAL—JURY—WAIVER.
   A defendant in a criminal case may waive a jury trial or
   stipulate to a jury trial with less than 12 jurors once the
   trial has begun and one juror becomes ill.

Appeal from Recorder's Court of Detroit, Gerald
W. Groat, J.   Submitted Division 1 January 15,
1970, at Detroit.   (Docket No. 7,608.)   Decided Feb-
ruary 6, 1970.

Jerome I. Smith was convicted of carrying a con-
cealed weapon without a license.   Defendant ap-
peals.   Affirmed.

REFERENCES FOR POINTS IN HEADNOTES
[1–3]  56 Am Jur, Weapons and Firearms § 11 et seq.
[4]  47 Am Jur 2d, Jury §§ 72–89, 128.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Samuel J. Torina,* Chief Appellate Lawyer, and *William B. McIntyre, Jr.,* Assistant Prosecuting Attorney, for the people.

*Robert H. Lorion,* for defendant on appeal.

Before: DANHOF, P. J., and FITZGERALD and McGREGOR, JJ.

FITZGERALD, J. Defendant Jerome I. Smith was tried by a jury in recorder's court of Detroit and found guilty of carrying a concealed weapon without a license.* Smith was sentenced to serve three to five years in prison and has appealed.

Smith was tried with a codefendant, Willie Kirksey. The prosecution presented evidence that at approximately 8:40 p.m. on January 11, 1968, police observed a white 1962 Oldsmobile make an illegal left turn at E. Outer Drive and Seven Mile road in Detroit. The officer ordered the car to stop and approached the driver's side, while his partner proceeded toward the passenger side of the car.

The officer observed a shoulder holster strap on the person of the front seat passenger, Ronnie Ingram, and commanded the passengers to leave the car. A search of the car and passengers revealed that the driver of the car, Willie Kirksey, had a loaded .32 automatic pistol in his jacket pocket. A loaded sawed-off .22 rifle and a machete were found under the front seat. Defendant Jerome Smith was seated in the back seat and no weapons were found on his person.

Willie Kirksey took the stand and testified that his friend, Jerome Smith, requested a ride for himself

---

* MCLA § 750.227 (Stat Ann 1962 Rev § 28.424).

and Ronnie Ingram to the E. Outer Drive and Seven Mile road area. Kirksey maintained that when they arrived at Outer Drive, he left his jacket in the car and went in a drug store for some cigarettes. When he returned, and started driving, his car was stopped by the police. He denied all knowledge of the existence of the .32 automatic in his pocket. The car was owned by Kirksey's stepfather and always contained the machete which was used for fish cleaning.

Ronnie Ingram testified that he did not know Kirksey before January 11, 1968. He supported Kirksey's story that Kirksey went to buy cigarettes, and said that at that time he went to the car of Frank Dollars and bought three guns. Ingram maintained that neither Kirksey nor Smith knew of the purpose of the meeting with Dollars. Ingram stated that he hid the .32 automatic pistol in Kirksey's coat pocket and concealed the other weapons in the car.

Police Detctive Dennis Darin took the stand and introduced a statement made by Ronnie Ingram after he was incarcerated. The statement reads as follows:

"On January 11, 1968, at 8 or 8:30 p.m., Willie Kirksey picked me up at my home. We drove over to the other boy's house and picked him up, the guy we are locked up with, Jerome Smith. Willie was driving. I was sitting in the right front seat with Jerome Smith in the back. I drove [sic] Willie to drive me to 7 Mile and Outer Drive, East Outer Drive, where I was going to meet a Larry Dyer, a white male, about 31, who works in the apartment 9740 Chrysler's Mack Avenue and buy some guns from him. We drove to 7 Mile and East Outer Drive and parked in the parking lot. Larry was waiting for us and came over and got into our car, in the back, next to Jerome Smith. He pulled guns, two hand guns out of his trousers and a sawed-off rifle out of his coat. He offered to sell me one of the

hand guns for $50. I told him I wanted to try them
out so he gave me a shoulder holster to carry. Wil-
lie took the other gun and the rifle was left in the
back seat with Jerome Smith. We were going to go
to my house to try these guns out when we were
stopped by the police. I think Larry was going to
follow us in his car. I don't know what happened
to him."

And this was signed, "Ronnie Ingram." Ingram,
however, denied making this statement.

The jury found both defendants guilty as charged.

On appeal, defendant Smith asks whether the
prosecution proved beyond a reasonable doubt all
of the elements of MCLA § 750.227 (Stat Ann 1962
Rev § 28.424). The statute involved reads as fol-
lows:

Sec. 227. "Carrying concealed weapons. Any
person who shall carry a dagger, dirk, stiletto or
other dangerous weapon except hunting knives
adapted and carried as such, concealed on or about
his person, or whether concealed or otherwise in any
vehicle operated or occupied by him, except in his
dwelling house or place of business or on other land
possessed by him; and any person who shall carry
a pistol concealed on or about his person, or, whether
concealed or otherwise, in any vehicle operated or
occupied by him, except in his dwelling house or
place of business or on other land possessed by him,
without a license to so carry said pistol as provided
by law, shall be guilty of a felony, punishable by im-
prisonment in the state prison for not more than
5 years, or by fine of not more than 2,500 dollars."

The question of the interpretation of this statute,
especially as it pertains to the carrying of weapons
in cars, has appeared recently many times. The
essential issue posed by most of these appeals is
whether knowledge and participation are required in
order to convict under the statute, or whether mere

presence in a car with an unlicensed weapon violates the statute.

The prosecution argues that since knowledge is not mentioned in the statute, none is required to find a defendant guilty. In *People* v. *Williamson* (1918), 200 Mich 342, 346, the Court stated the following:

"While there is a diversity of holdings in the different states, depending largely upon varying local statutes, the great weight of authority is to the effect that the intent, or purpose with which the weapon is carried, is not an element of the statutory offense. Of course, if the weapon was carried upon his person through restraint or ignorance, that would be a good defense to the prosecution. But nothing of that kind is claimed in the instant case. The following cited cases are in point upon this question: *State* v. *Williams* (1886), 70 Iowa 52; *Walls* v. *State* (1845), 7 Blackf (Ind) 572; *Ridenour* v. *State* (1879), 65 Ind 411; *Cutsinger* v. *Commonwealth* (1890), 70 Ky 392; *Strahan* v. *State* (1890), 68 Miss 347."

Later the Court commented that "we agree with counsel that concealment implies an assent of mind and purpose, but the word is not a technical one", at p 349.

In 1940 *People* v. *Moceri* (1940), 294 Mich 483, was decided in a manner which seemed to eliminate the need for knowledge. Defendant Moceri was arrested as he was entering a car which had a pistol on the floor. Moceri was convicted of carrying a concealed weapon. He appealed, arguing that his conviction was against the great weight of the evidence. The Court held that "The testimony has been examined and the conviction is not against the great weight of the evidence." (At p 485.)

The *Moceri* decision was distinguished in *People* v. *Petro* (1955), 342 Mich 299. In *Petro,* a gun was found in a secret compartment of a car. Defendant

was convicted of carrying a concealed weapon. On appeal, his conviction was reversed. The Court reasoned that the concealed weapons statute contained no statutory presumption as to knowledge that guns were present in a car. The Court found that it was impermissible to pyramid inferences upon inferences. (pp 307, 308.) In other words, the jury in *Petro* had to infer: (a) that defendants knew of the secret compartment, and from this inference it had to infer (b) that defendants knew that guns were in this compartment.

The Court proceeded to deal with the *Moceri* case:

"It is the duty of courts to reverse criminal convictions based upon an inference upon an inference in the absence of a statutory presumption. My Brother relies on *People* v. *Moceri* (1940), 294 Mich 483, to affirm the conviction. In that case the police officers found a revolver on the floor of the automobile occupied by the defendant. That was an established fact. There was an inference from such fact that defendant had knowledge of the presence of the revolver." (At p 308.)

The concealed weapons statute does not punish presence in a car where a pistol is found. The statute's thrust is "carrying concealed weapons without a license". In other words, the point of the statute is to punish "carrying". Thus, to convict one who is merely present in a car necessarily rests upon two inferences: (a) an inference that he knows a pistol is present; and (b) an inference that he is carrying the pistol. Therefore, even by showing that someone knew a pistol was present should not lead *automatically* to a conclusion that he was "carrying" the pistol.

An analysis of a similar question was offered in *People* v. *Eaves* (1966), 4 Mich App 457. *Eaves* concerned a conviction for unlawful possession of

narcotics. The argument propounded by appellant was that she was improperly convicted because inference was added to inference to achieve a conclusion that she threw a package of heroin from an automobile. The Court disagreed, pointing out that sufficient facts were present to warrant a finding that defendant threw the package from the car. Principal reliance was placed on *People* v. *Harper* (1962), 365 Mich 494.

In *Harper*, Justice SOURIS analyzed the meaning of the word "possession" in the illegal possession of drugs statute. He held that the legislature used the words "possession" and "control" in their commonly understood sense, and not in a restricted technical sense. He concluded that:

"The marijuana was placed in Harper's car with his consent, with his knowledge that it was marijuana, and with his intent that it be placed there to aid and abet Reich in his efforts to avoid police detection of its unlawful possession. Under these circumstances, we cannot conclude other than that the record amply supported Harper's conviction."

A similar approach can be taken with respect to the construction of the word "carrying". In its ordinary meaning, there must be evidence of participation in the act of carrying in order to convict under the statute.

Applying this to the case at bar, there is a strong case for affirmance. The statement of Ronnie Ingram, *supra*, read by the detective, clearly indicates a common intent and participation on the part of all the men in the car. This is clear and convincing evidence that there was knowing participation in the commission of the crime. Furthermore, the court's instructions to the jury indicated that the weapons had to be knowingly carried:

"It is sufficient to bring the offense within the statute if you find that the weapon fairly comes within the class of weapons included in the statute and defendant knowingly carried it concealed on or about his person or in any vehicle operated or occupied by him, or them."

The charge to the jury was correct, and there was credible evidence in the record that defendant, Jerome Smith, knowingly carried the weapons found in Kirksey's car. Accordingly, the jury verdict is affirmed.

Defendant also suggests it was reversible error to continue defendant's trial with 11 jurors.

It appears that juror number 3 called in sick and the trial judge then consulted with the attorneys. Both attorneys stipulated that they would proceed with 11 jurors. Defendant argues that this violated the holding of *People* v. *Hill* (1868), 16 Mich 351.

In the *Hill* case, Justice CHRISTIANCY held that a defendant could not in a criminal case waive or stipulate to a jury trial with less than 12 jurors. Subsequently the *Hill* holding was reconsidered in *Attorney General, ex rel. O'Hara,* v. *Montgomery* (1936), 275 Mich 504. In *Montgomery,* a juror became ill, and defendant's attorney stipulated that he would continue with 11 jurors. Justice POTTER ruled in a lengthy and learned opinion that the *People* v. *Hill* case was no longer the law. He held (at p 530) that:

"If defendant in a criminal case in a court of record may orally waive a jury entirely and be tried by the court, I can see no reason why in a court of record he may not waive a trial by jury of 12 and consent to be tried by a jury of 11."

Justice POTTER continued as follows (at p 539):

"Where all these safeguards are thrown around a defendant charged with crime, where he may vol-

untarily confess his guilt and such confession may be proved against him on the trial; where he may waive a jury trial and enter a plea of guilty and such plea of guilty is made the basis of a judgment or sentence; where the legislature is specifically authorized to provide for a jury of less than 12 persons; where he may waive, in a court of record, upon complying with the statute, the right of trial by jury in a criminal case; and can waive the right of trial by jury, in a court of record, by his own voluntary act, regardless of the statute, there is no danger in permitting defendant in a criminal case to waive the privilege of trial by a jury of 12 persons and consent to be tried by a jury of 11 persons. He need not enjoy the right of a speedy and public trial by an impartial jury if he does not want to. He may consent to be tried by the court, or he may consent to be tried by a jury of less than 12. Under circumstances such as arose in this case, the defendant may be better satisfied to proceed with a jury consisting of 11 jurors already sworn than to take his chances upon the discharge of that jury and the impaneling of another."

See, also, 2 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 572, pp 736, 737.

The 11-juror question is answered in *Attorney General* v. *Montgomery, supra,* and does not represent error.

Affirmed.

All concurred.