PEOPLE v BUTLER

Docket No. 62895. Argued October 8, 1980 (Calendar No. 10).—Decided May 27, 1982.

Belton Butler was convicted by a jury in the Wayne Circuit Court, Horace W. Gilmore, J., of carrying a pistol in a motor vehicle. The Court of Appeals, V. J. Brennan and Bashara, JJ. (N. J. Kaufman, P.J., dissenting), affirmed in an unpublished per curiam opinion (Docket No. 77-1429). The defendant appeals, arguing that the trial court's failure to instruct the jury on the element of "carrying" was error requiring reversal.

In an opinion by Justice Levin, joined by Justices Kavanagh, Fitzgerald, Ryan, and Moody, the Supreme Court *held:*

Failure to instruct the jury that "carrying" the weapon is an essential element of the crime charged is error requiring reversal for a new trial.

1. The language of the statute which proscribes the carrying of a weapon in a motor vehicle is unequivocal in the requirement that, in order for guilt to attach, a person must *carry* the weapon. Knowledge that there is a weapon in the vehicle and presence in the vehicle are insufficient to lead automatically to a conclusion that the defendant is carrying the weapon.

2. An instruction by a trial court which omits carrying as an essential element of the offense is insufficient to discharge the court's duty to inform the jury of the applicable law. Such an instruction would permit the defendant to be convicted on the basis of his knowledge of and proximity to the weapon even though he had no physical contact with it and the knowledge was acquired only shortly before his arrest. Reading this essential element out of the statute would permit the prosecution to circumvent its obligation to prove all the elements of the crime beyond a reasonable doubt.

3. A charge to the jury should be viewed in its entirety to

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 75 Am Jur 2d, Trial § 713.
[3] 5 Am Jur 2d, Appeal and Error § 894.
[4] 79 Am Jur 2d, Weapons and Firearms § 15.
[5] 79 Am Jur 2d, Weapons and Firearms §§ 9, 12.
[6] 75 Am Jur 2d, Trial §§ 712-714, 716.

determine whether asserted error is prejudicial, but the comments of persons other than the judge cannot remedy a defective charge. The curative effect of a correct statement of the law by counsel in closing argument is greatly diminished by the stature of the judge as a detached referee. As is common practice, the judge in this case insisted that his instructions on the law were definitive, and the prosecution's position that references in closing argument to "carrying" were curative is predicated on the assumption that the jury disregarded that admonition.

4. The judge did not adequately discharge his obligation to instruct the jury regarding the applicable law. The quotation of the statute may in theory place all the elements of the crime before the jury, but such a recitation may be ignored in favor of the judge's subsequent and oftentimes more colloquial explanation. In this case the word "carrying" was mentioned several times in the charge, but its legal significance was never explained. Moreover, the explanation of the necessary elements of the offense was calculated to divert the jury from the legal significance of "carrying". A reasonable juror could have concluded that a conviction need not be predicated on proof of or a finding of "carrying", and that the word was merely a shorthand reference to other elements instructed upon and not itself a separate element. In the instant case there was evidence which, if believed, would have negated the element of carrying and may have led to an acquittal.

Justice Levin also wrote a separate concurrence in answer to the dissenting opinion. The issue whether there was sufficient evidence to convict the defendant, as raised by Justice Williams, is not properly before the Court. The issue was not raised by the defendant in his application for leave to appeal, and when, during oral argument, the issue was raised by questioning by the Court, the defendant's appellate counsel took pains to emphasize that the appeal was not based on insufficiency of the evidence, but on the infirmity of the jury instruction. While discussion of the issue might be helpful, it would not be precedential, being merely dictum. The concept of elements of the offense is not raised in the initial paragraphs of the instruction. When the concept is subsequently raised, no mention is made of the element of carrying. Nowhere did the trial court identify or describe carrying as an element of the crime, let alone clearly indicate that it was a principal element or the gravamen of the offense, in such a way that the jury could not fail to understand its importance and necessity. The omission concerns substance, not style.

Reversed and remanded.

Justice Williams, joined by Chief Justice Coleman, dissented. There are two issues in the case: whether the jury properly rendered a verdict of guilty, and whether the trial judge gave adequate jury instructions covering the elements of the offense. A person who knowingly operates a motor vehicle in which a pistol is carried may be inferred to be carrying the pistol as proscribed by the concealed weapons statute. In a prosecution for the carrying of a concealed weapon, jury instructions which include a reading of the charge in the language of the statute, clearly indicating that the gravamen of the crime is carrying a pistol in a vehicle operated by the defendant, taken as a whole, clearly informed the jury of all the elements of the crime, notwithstanding the absence of the word "carry" in every paragraph of the instructions.

1. The mere act of carrying a pistol in a vehicle is insufficient to come within the proscription of the statute; the defendant must knowingly carry the pistol. Because the defendant owned the vehicle which he was driving, and the pistol was carried in the vehicle, it is logical to conclude that he participated in carrying the pistol. Sufficient evidence was introduced to allow the jury to conclude that the defendant knowingly carried the pistol.

2. The Legislature, by employing the contrasting wording of the clause "concealed on or about his person" with the succeeding clause "whether concealed or otherwise, in a vehicle operated or occupied by him" intended a much looser nexus between a pistol and a defendant "in a vehicle" than a pistol concealed "on or about his person". In contrast, the facts in the instant case establish a substantial nexus, the pistol having been found on the floorboard of the car between the defendant's feet. In driving a vehicle carrying a pistol, a defendant "carries" the pistol within the proscription of the statute.

3. The jury instructions included a reading of the charge against the defendant with the applicable statutory language. The carrying element of the crime was particularly emphasized in such a way that the jury could not have failed to understand the importance and necessity of that element. Taken as a whole, the instructions sufficiently informed the jury of all the elements of the crime.

### OPINION OF THE COURT

1. CRIMINAL LAW — CONCEALED WEAPONS — APPEAL — INSTRUCTIONS TO JURY.

An instruction to the jury in a prosecution for carrying a weapon

in an automobile which omits to instruct that carrying the weapon is an essential element of the offense is error requiring reversal (MCL 750.227; MSA 28.424).

2. CRIMINAL LAW — CONCEALED WEAPONS — INSTRUCTIONS TO JURY.

An instruction to the jury in a prosecution for carrying a weapon in an automobile that the elements of the offense are that there was a weapon in the automobile, that the defendant owned or operated the automobile, and that the defendant knew that the weapon was in the automobile is insufficient to inform the jury of the elements of the crime because it omits the essential element that the defendant was carrying the weapon (MCL 750.227; MSA 28.424).

3. CRIMINAL LAW — INSTRUCTIONS TO JURY — APPEAL.

A trial court's charge to the jury should be reviewed in its entirety to determine whether error requiring reversal occurred, but the review should not include consideration of comments by others than the trial judge to remedy an otherwise defective charge.

DISSENTING OPINION BY WILLIAMS, J.

4. CRIMINAL LAW — CONCEALED WEAPONS — CARRYING — INTENT.

*A defendant, in order to be convicted of carrying a weapon in a motor vehicle, must be shown to have knowingly carried the weapon in the vehicle; the mere act of carrying the weapon without the requisite criminal intent is insufficient (MCL 750.227; MSA 28.424).*

5. CRIMINAL LAW — CONCEALED WEAPONS — CARRYING.

*A defendant owner of a motor vehicle who is operating the vehicle when a proscribed weapon is discovered by police may be inferred to be "carrying" the weapon for the purpose of applying the concealed weapons statute (MCL 750.227; MSA 28.424).*

6. CRIMINAL LAW — CONCEALED WEAPONS — INSTRUCTIONS TO JURY.

*Instructions to a jury in a prosecution for carrying a pistol in a motor vehicle which included a reading of the crime charged and the applicable statutory language and which initially emphasized the carrying of the weapon as an essential element of the crime, when taken as a whole, were sufficient to inform the jury of the elements of the crime notwithstanding failure of the trial court to include the word "carry" in its subsequent elaboration of the elements (MCL 750.227; MSA 28.424).*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Timothy C. Scallen,* Assistant Prosecuting Attorney, for the people.

*Kim Robert Fawcett,* Assistant State Appellate Defender, for the defendant.

LEVIN, J. Belton Butler was convicted of carrying a concealed weapon.[1] The people's evidence tended to show that he was riding in an automobile in which a revolver was found. The judge, in instructing the jury, stated the pertinent language of the statute making it an offense to "carry a pistol whether concealed or otherwise, in a vehicle operated or occupied by" the defendant. He said that the elements of the offense were that there was a pistol in the automobile, that Butler owned or operated the automobile, and, that he knew that the weapon was in the automobile. He did not, however, instruct that "carrying" the weapon was an element of the offense.

We hold that the failure to so instruct requires a new trial and reverse and remand therefor.

I

Belton Butler and a companion, Victoria Mc-

---

[1] "A person who shall carry a dagger, dirk, stiletto, or other dangerous weapon except hunting knives adapted and carried as such, concealed on or about his person, or whether concealed or otherwise in any vehicle operated or occupied by him, except in his dwelling house or place of business or on other land possessed by him; and a person who shall carry a pistol concealed on or about his person, or, whether concealed or otherwise, in a vehicle operated or occupied by him, except in his dwelling house or place of business or on other land possessed by him, without a license to carry the pistol as provided by law or if licensed, carrying in a place or manner inconsistent with any restrictions upon such license, shall be guilty of a felony, punishable by imprisonment in the state prison for not more than 5 years, or by fine of not more than $2,500." MCL 750.227; MSA 28.424.

Loud, were arrested after two police officers stopped Butler's automobile as he was driving in Highland Park, Michigan. The police had earlier received a report linking Butler's automobile to an armed robbery and rape committed the previous day and had placed the automobile under surveillance. An officer testified that after the police stopped the automobile and Butler and his companion complied with an order to leave the automobile, he noticed a revolver resting on the automobile's floorboard a short distance from the driver's seat. Butler and his companion were arrested and charged with carrying a concealed weapon.

The officer acknowledged on cross-examination that he had not seen Butler in actual possession of the revolver. This factual gap was bridged by the person who made the report which led to surveillance of Butler's automobile. That person testified that on the day before Butler's arrest, he saw him with a "snub-nose" gun identical to the one found in the automobile. The prosecution also introduced a statement made by Butler in which he admitted that he knew the revolver was in the automobile but asserted that his companion, Victoria McLoud, had brought the gun into the automobile and that "she was the one who had the gun".

At the trial, Butler, the only witness called by the defense, denied knowledge of the gun's presence in the automobile or any previous possession of the gun.

The trial judge instructed the jury:

"Now, defendant in this case is charged under a statute or a law of the State of Michigan which says insofar as pertinent to this case the person *who shall*

*carry a pistol whether concealed or otherwise in a vehicle operated or occupied by him,* except in his dwelling house or place of business or other land possessed by him without a license to carry the pistol as provided by law, shall be guilty of a felony.

"In other words, the elements of the offense which are very simple, are, number *one, that there was a pistol in the motor vehicle which was owned or operated by the defendant, and second, that the defendant knew there was a pistol in the motor vehicle.*

"It does not have to be concealed in the vehicle. The elements are the existence of the pistol in the vehicle owned or operated by defendant, *and the knowledge of the defendant that the pistol was in the vehicle.* In other words, it must be proved, each of these elements must be proved beyond a reasonable doubt *that the pistol was in the vehicle, that the vehicle was owned or operated or occupied by the defendant, and the third, that the defendant knew that the pistol was in the vehicle.* Those are the elements of the offense. So it is not a complicated offense in any way, as you can see." (Emphasis supplied.)

The Court of Appeals affirmed in an unpublished opinion. We reverse because the jury was not instructed on an essential element of the offense.

## II

The parties disagree concerning the description of the crime of carrying a concealed weapon which would satisfy a trial court's obligation to charge a jury. The people contend that the elements are that there was a weapon in a vehicle operated or occupied by the defendant and that he knew or was aware of its presence. Butler, who does not contest the legal sufficiency of the evidence against him, contends that such an instruction omits an element of the offense in that a defendant's knowledge that there is a pistol in an automobile and

his mere presence in the automobile are not enough. Butler contends that the people must prove, and therefore the trial court must instruct, that no offense is committed unless the defendant "carried" the pistol. We agree.

The statute provides that a "person who shall carry a pistol * * * whether concealed or otherwise, in a vehicle operated or occupied by him" shall be guilty of a felony.[2]

The language of the statute is unequivocal. The offense is not committed unless the defendant "carries" the forbidden instrument. The normal and ordinary meaning of this word requires something more than the potentially fortuitous intersection of presence and knowledge. Given the wording of the statute and the absence of any evidence that the Legislature did not intend "carrying" to be an independent element of the offense, a court would not be justified in reading this word out of the statute.[3]

A central tenet of the criminal law is that "guilt is personal".[4] An instruction that the accused can be found guilty only if the jury finds that he was

---

[2] *Id.*

[3] The people cite Michigan decisions to support their contention that instructions on the element of "carrying" or participation in the act of carrying are not required. Some have dealt with the legal sufficiency of evidence necessary to convict, *People v Moceri,* 294 Mich 483; 293 NW 727 (1940); *People v Little,* 58 Mich App 12; 226 NW2d 735 (1975), others with instructional omissions unrelated to those at issue, *People v Henderson,* 45 Mich App 511; 206 NW2d 771 (1973), aff'd 391 Mich 612; 218 NW2d 2 (1974). None provide guidance in the present case.

[4] See *People v Germaine,* 234 Mich 623, 627; 208 NW 705, 706 (1926): "Felonious possession of intoxicating liquor involves more than mere knowledge that the owner and driver of an automobile in which one is riding by invitation has liquor in the car." *Cf. People v Burrel,* 253 Mich 321; 235 NW 170 (1931).

carrying a weapon comports with this traditional conception of criminal responsibility. Under the instruction given, which omitted specific reference to carrying as an element, an accused could be convicted if he knew that there was a weapon in direct proximity to him even though he may have had no physical contact with the weapon and no knowledge of its presence in the vehicle until shortly before his arrest.

Reading "carrying" out of the statute would risk the conviction of innocents whose only real crime was the proverbial one of being in the wrong place at the wrong time. The criminal law, however, punishes misdeeds, not misjudgment. An accused must author his own guilt. It cannot be ghost-written by others. The statutory prerequisite that a defendant "carry" a weapon before guilt attaches implements an important principle of the criminal law that should not be yielded except upon truly compelling evidence of a legislative purpose to punish without regard to complicity.[5]

We adopt the analysis of Justice FITZGERALD, writing for the Court of Appeals, in *People v Jerome I Smith,* 21 Mich App 717, 722; 176 NW2d 430 (1970):

"The concealed weapons statute does not punish presence in a car where the pistol was found. The statute's thrust is 'carrying concealed weapons without a license'. In other words, the point of the statute is to punish 'carrying'. Thus, to convict one who is merely present in a car necessarily rests upon two inferences: (a) an inference that he knows a pistol is present; and (b) an inference that he is carrying the pistol. Therefore, even by showing that someone knew a pistol was

---

[5] *Cf. Morissette v United States,* 342 US 246; 72 S Ct 240; 96 L Ed 288 (1952).

present should not lead *automatically* to a conclusion
that he was 'carrying' the pistol."

## III

The people contend that a review of the "totality
of circumstances" indicates that, even if a judge
must instruct separately on "carrying" as an ele-
ment of the offense, the elements of the offense
were effectively communicated to the jury. These
circumstances include: (1) the judge's reading of
both the information and the pertinent provision
of the statute defining the offense, (2) the judge's
statement of the defense theory that the defendant
"was not carrying the pistol and that he did not
know of its presence in the vehicle", and (3) the
references in counsel's closing argument to the
"carrying" element.

We conclude that these circumstances, neither
separately nor in conjunction, supply an effective
antidote for a charge which three times stated
that the defendant's knowledge that the pistol was
in the vehicle suffices.

The judge's obligation to instruct the jury re-
garding the law is not discharged unless he in-
structs correctly regarding the elements of the
offense.[6] Though some might say the need for
correct instruction by the judge is self-evident, the
policies supporting this rule of law deserve empha-
sis.

The people have an obligation to prove all the

---

[6] See *People v Liggett,* 378 Mich 706, 714; 148 NW2d 784 (1967);
*People v MacPherson,* 323 Mich 438; 35 NW2d 376 (1949); *People v
Kanar,* 314 Mich 242, 254; 22 NW2d 359 (1946).

elements of a crime beyond a reasonable doubt.[7] If a judge may omit an instruction concerning a necessary element, the people are permitted to circumvent this burden of persuasion. A factual determination entrusted solely to the jury may be effectively taken from it and decided adversely to the defendant, even though the people have failed to meet its evidentiary burden.

A judge's incorrect recitation of the law undermines the purpose of jury instructions. Rather than conforming the jury's factfinding to the law, an incorrect instruction poses the unacceptable risk of convicting a defendant of a crime unknown to the laws of Michigan. It is not, therefore, surprising that this Court will scrutinize the contested instruction closely and, upon finding that a judge failed to inform a jury of the true nature of the offense charged, will not countenance claims of "harmless error" but will reverse. *People v Reed*, 393 Mich 342, 351; 224 NW2d 867 (1975).

This Court has frequently said that a charge to a jury should be viewed in its entirety to determine whether asserted error is prejudicial.[8] But it has not adhered to a "totality of circumstances" doctrine which would permit the comments of those other than the judge to remedy a defective charge. The argued-for approach places too much faith in what is said as opposed to the credibility of the person who says it. When counsel correctly states the law in closing argument and the bench follows with an erroneous charge, is it more accurate to say that the former cures the latter or that the jury faces a conflict? And if a jury must choose, can it seriously be maintained that a jury

---

[7] See *People v Rios*, 386 Mich 172; 191 NW2d 297 (1971).

[8] See *People v Schwitzke*, 316 Mich 182, 184; 25 NW2d 160 (1946).

will repose its confidence in an advocate rather than a detached referee?

The probable curative effect of counsel's remarks is further diminished in the context of the charge at issue. As is common practice, the judge insisted that his instructions on the law were definitive. The people's position is predicated on an assumption that the jury disobeyed the judge's admonition. Regardless of whether counsel's remarks adequately explain the offense, we are unwilling to look beyond the instructions actually given for circumstances which might ameliorate their effect.

The people urge that *People v Noyes*, 328 Mich 207, 210; 43 NW2d 331 (1950), establishes that the omission of an element of a crime is not error if the relevant statute containing reference to the element is read to the jury. Though this was indeed the result in *Noyes*, the only justification there offered are two conclusory sentences which dispose of the case at hand but provide no rule for future cases. This Court has not subsequently relied on *Noyes* as holding that the quotation of the relevant statute will invariably remedy an otherwise misleading charge. Rather a more searching inquiry has been conducted to assess if the charge taken in its entirety is "fair and sufficiently comprehensive", *People v Kruper*, 340 Mich 114, 122-123; 64 NW2d 629 (1954).

The fairness of a jury charge cannot be assessed in a purely mechanical manner.[9] Juries are not

---

[9] It is accepted, in jurisdictions other than Michigan, that reading the information or statute does not alone make for an adequate instruction on the elements of an offense, and that the adequacy of the instruction depends on the charge as a whole. See *United States v Harris*, 346 F2d 182, 184 (CA 4, 1965); *United States v Hernandez*, 290 F2d 86 (CA 2, 1961) (failure to go beyond general language of

steeped in the law. They do not methodically parse statutes to discern their meaning. Though the quotation of the statute may in theory place all the elements of a crime before the jury, such a recitation may be ignored in favor of the judge's subsequent and oftentimes more colloquial explanation of the offense.

We are unable to conclude that the judge effectively communicated the element of "carrying" to the jury. While the word "carrying" was mentioned several times in the judge's charge, its legal significance was never explained to the jury. Moreover, the judge's explanation of the necessary elements of the offense was calculated to divert the jury from attending to the legal significance of "carrying". Three times the judge repeated the necessary elements of the offense and on each occasion made no mention of the people's obligation to prove or of the need for the jury to find the "carrying" of the weapon. A reasonable juror could have concluded that a conviction need not be predicated upon proof or a finding of "carrying", and that the word was merely a shorthand reference to the other elements instructed upon and not itself a separate element.[10] We conclude that the judge did not adequately discharge his obligation to instruct the jury regarding the applicable law of the case.

statute and define or explain meaning of "possession" was reversible error); *People v Henderson,* 25 Cal App 3d 371; 101 Cal Rptr 129 (1972); *State v Kimbrough,* 109 NJ Super 57; 262 A2d 232 (1970) (failure to instruct regarding distinction between passenger and driver with respect to meaning of possession of stolen article is reversible error); *People v Zurita,* 76 AD2d 871; 428 NYS2d 495 (1980).

[10] For an expression of doubt that a general instruction can ever cure a misleading specific one where there is no rhetorical inconsistency between the two, see *Sandstrom v Montana,* 442 US 510, 518, fn 7; 99 S Ct 2450; 61 L Ed 2d 39 (1979).

Our insistence on a proper charge does not stem from an overdeveloped sense of procedural nicety. In the instant case there was evidence which, if believed, would have negated the element of "carrying" and may have led to an acquittal.

## IV

Though we have decided that the people must prove that the defendant carried the pistol and that the jury must be separately instructed on that element of the offense, the exact contours of this requirement necessarily remain unsettled, left to await the exacting discipline of future cases which directly present the question.[11]

Reversed and remanded for a new trial.

---

[11] Other jurisdictions have dealt with what it means to carry a weapon in a motor vehicle. See, generally, Anno: *Offense of carrying concealed weapon as affected by manner of carrying or place of concealment,* 43 ALR2d 492.

The case law indicates that the concepts of "carrying" and "possession" have much in common. See *State v Benevides,* 425 A2d 77 (RI, 1981), which states that a defendant carries a weapon when he exercises some element of intentional control or dominion over it. Most jurisdictions have held that this control need not amount to "actual possession" but that it encompasses "constructive possession" of the forbidden instrument as well. See *Brown v United States,* 58 US App DC 311; 30 F2d 474 (1929).

Hard and fast rules regarding what circumstantial evidence is sufficient to sustain a conviction of carrying a weapon in a motor vehicle have not evolved. The decisions have, however, emphasized the relevancy of the following factors either alone or in combination: (1) the accessibility or proximity of the weapon to the person of the defendant, (2) defendant's awareness that the weapon was in the motor vehicle, (3) defendant's possession of items that connect him to the weapon, such as ammunition, (4) defendant's ownership or operation of the vehicle, and (5) the length of time during which defendant drove or occupied the vehicle. See *State v Miller,* 238 Or 411; 395 P2d 159 (1964); *Commonwealth v Whitman,* 199 Pa Super 631; 186 A2d 632 (1963); *People v Davis,* 157 Cal App 2d 33; 320 P2d 88 (1958); *Waterstaat v United States,* 252 A2d 507 (DC App, 1969); *Commonwealth v Collins,* 81 Mass App 624; 417 NE2d 994 (1981).

We do not wish to be understood, by reference to the foregoing factors, as expressing any view with regard to their relevancy or importance.

KAVANAGH, FITZGERALD, RYAN, and BLAIR
MOODY, JR., JJ., concurred with LEVIN, J.

LEVIN, J. *(concurring)*. The dissenting opinion of
my colleague states that there are two issues in
this case. Firstly, whether there was sufficient
evidence to convict; and secondly, whether the jury
instructions adequately covered the elements of
the offense. The opinion concludes that the. evi-
dence supports a jury finding that the statute was
violated and that the judge's instructions were not
reversibly erroneous.

There is, however, only one issue. Defendant's
appellate counsel expressly eschewed appellate
consideration of the sufficiency of the evidence.
The instructions were, indeed, erroneous. The de-
fect is not a matter of little consequence; there is
"reversible error".

The jury was not "adequately" informed that
"carrying" was an element of the offense by in-
structions which thrice excluded any reference to
that element of the offense.

## A

The only question stated in the application for
leave to appeal, in this Court's order granting
leave to appeal and in Butler's brief on appeal is
whether the trial court committed instructional
error.[1]

---

[1] The application for leave to appeal stated the question as follows:

"Whether the trial judge erred reversibly when it failed to instruct
the jury, as requested by defense counsel, on the essential element of
'carrying' where the offense charged was carrying a concealed weapon
in a motor vehicle and when he refused defense counsel's request to
instruct on appellee's theory of the defense, mere presence, where the
evidence adduced at trial would support that theory?"

This Court's order granting leave to appeal stated the question as
follows:

"The parties are directed to include among the issues to be briefed

During oral argument, the sufficiency of the evidence was raised by bench questioning. Butler's appellate counsel, in his response to the questions, said: "I'm not contesting the sufficiency of the evidence here" and "[t]hat would be in my opinion a jury question", and if "it turns on credibility then it's going to have to turn on an *accurate jury instruction*".[2] (Emphasis supplied.)

whether the trial court committed reversible error in failing to instruct the jury as to all the elements necessary to prove a violation of MCL 750.227; MSA 28.424 and by failing to give the jury a 'mere presence' instruction."

Butler's brief on appeal stated the questions as follows:

"A. In order to convict a defendant of carrying a pistol in a motor vehicle must a jury find both knowledge of the pistol's presence in the vehicle and participation by the defendant in the act of carrying?

\* \* \*

"B. Did the trial judge deny appellant his constitutional right to trial by jury by failing to instruct the jury to resolve whether appellant participated in the act of carrying?

\* \* \*

"C. Was the failure to instruct on the essential element of participation in the act of carrying harmless error?

\* \* \*

"II. Was appellant denied a fair trial by the trial judge's refusal to grant the defense request to instruct on mere presence where the evidence adduced at trial would support that theory?"

[2] Defendant's counsel took pains to emphasize that his appeal was not based on evidentiary sufficiency but on the infirmity of the jury instruction:

"*Mr. Fawcett:* \* \* \* the *Jerome I Smith* case [21 Mich App 717; 176 NW2d 430 (1970)] also states that mere presence in an automobile where a pistol is located does not automatically lead to the conclusion that every individual in the car is guilty of involvement with the pistol.

"*Justice Williams:* Who was the defendant in that case?

"*Mr. Fawcett:* Who was the defendant?

"*Justice Williams:* In the *Jerome I Smith* case?

"*Mr. Fawcett:* Jerome Smith was the defendant.

"*Justice Williams:* I know, but was he a driver, or occupant?

"*Mr. Fawcett:* Back seat. Willie Kirksey was the driver. Ron Ingram was a passenger.

"*Justice Williams:* That case is not on all fours with this, is it?

"*Mr. Fawcett:* Well, there were three people and—

"*Justice Williams:* The defendant was not the driver?

"*Mr. Fawcett:* Correct, correct. In that case Mr. Kirksey said he got

The dissenting opinion thus injects a new issue into this case. While a discussion of evidentiary sufficiency may be helpful, it would not be precedential. " 'Statements and comments in an opinion concerning some rule of law or legal proposition not necessarily involved nor essential to determination of the case in hand, are, however illuminating, but *obiter dicta* and lack the force of an adjudication.' " *Hett v Duffy,* 346 Mich 456; 78 NW2d 284 (1956).

The principle of judicial self-discipline which discourages decision on issues not before the court seeks to economize the time and energy of the court and to avoid erroneous judgment. The adversary system disciplines the judicial inquiry and serves to crystallize the difficult choices with

out to buy cigarettes and was never around when Mr. Ingram and Mr. Smith, according to a pretrial statement, had then engaged in a discussion about purchasing arms. So I suppose that's one, one could analogize that Mr. Butler is in the same position as either Mr. Ingram or Mr. Smith unless your Honor's indicating that perhaps the driver is some indicia of control.

"*Justice Williams:* I am, exactly.

"*Mr. Fawcett:* Well your Honor, *I'm not contesting the sufficiency of the evidence here. It's not—we don't have a problem on whether or not the jury could have gone one way or the other had they been properly instructed. Our contention is that—*

"*Justice Williams:* Well, isn't that the question whether you participate? The driver has certainly participated in the locomotion of that car. That car is transporting the gun.

"*Mr. Fawcett:* Well your Honor, if that's the case, then 750.227 requires only that for commission, anyone could be in a car where there's a pistol. And—

"*Justice Williams:* Not at all. The passenger is not operating the car. The passenger may have stepped in after the driver came in, put the gun down, ten miles later a hitchhiker comes in, doesn't even notice the gun until later on.

"*Mr. Fawcett:* That would be in my opinion a jury question whether, based upon what testimony is in the case, who was the participant, or both, or neither. And if there is a jury question, it turns on credibility of whatever testimony is in the record. *And if it turns on credibility then it's going to have to turn on an accurate jury instruction."* Argument before the Michigan Supreme Court, October 8, 1980. *People v Butler,* Case No. 62895, pp 3-4. (Emphasis supplied.)

which we generally find ourselves confronted. When an issue is not presented in the form of a keenly contested and discrete controversy, a court is denied a valuable resource that contributes both to the legitimacy and wisdom of its judgment.

No compelling reason has been suggested for reaching out to consider the sufficiency of the evidence. The single issue presented on appeal does not concern the sufficiency of the evidence. Nor does it concern what inferences may be drawn in varying factual situations. Nor are we presented with the question whether there is need or justification for formulating a presumption concerning what constitutes a prima facie case.

The view expressed in the dissenting opinion regarding the sufficiency of the evidence constitutes the first expression of views thereon by a member of this Court. In this jurisprudential vacuum, that view, absent an expression from other members of the Court, might be read by some as having our approval. It is for this reason that I feel constrained to make some non-precedential, non-decisional observations of my own which, because they are of that character, will be set forth in a footnote.[3]

---

[3] The dissenting opinion equates the act of transportation with "carrying". He speaks of "a car carrying" Butler, another occupant, and the gun. The car, then, is the carrier of the gun. It is reasoned that since the car belonged to Butler and he was driving it "one must logically conclude that he [as well as the car] was carrying the pistol in the vehicle just as one must conclude that a man driving a car carrying a load of hay was carrying a load of hay in the vehicle".

A person driving a car carrying a load of hay ordinarily will necessarily know, before he takes the wheel, that there is a load of hay in or behind the vehicle. A person driving an automobile does not, however, necessarily know that a small object, a pistol, is in the vehicle. Nor, if there is another occupant, will the driver necessarily know whether the other occupant was carrying a pistol on or about his person when he entered the vehicle, or even whether, while the

driver is operating it, the occupant has removed a pistol from a place of concealment (a jacket, purse or briefcase) and placed it in the interior of the vehicle.

The dissenting opinion states that there must be criminal intent, and that "knowingly" carrying the pistol constitutes criminal intent. Then, because there was evidence that the gun looked like a gun that Butler had in his possession the day before and he had admitted the gun was in the vehicle, that "[w]e must conclude, then, that the operative facts in this case are that the defendant knowingly carried a pistol in his vehicle which he was operating". I agree that such evidence permits the trier of fact to infer that Butler was aware of the presence of the gun in the vehicle; but it does not follow that he "carried" it in the vehicle.

The dissenting opinion examines the statutory language and states that a much "looser nexus" is required with the defendant where the charge is carrying "in a vehicle" than where the charge is carrying "on or about his person".

I disagree with the apparent conclusion that the element of carrying is established by merely showing that Butler drove the car knowing that a pistol was located within it. It must be shown that Butler had possession or control of the pistol.

Suppose a driver enters a vehicle with a companion. The companion is carrying a concealed weapon. During the course of the drive the companion turns to the driver and says, "I'm a little uncomfortable." He then produces the pistol and sets it down beside the driver. The driver sees the pistol but continues to drive. Perhaps the parties' destination is only a short distance away. Before reaching the destination the vehicle is stopped and the pistol is discovered. On those facts alone the trier of fact could not logically conclude that it was the driver rather than the occupant who carried the pistol.

The statute should be construed to carry out its apparent purpose of deterring the illegal *possession* of firearms. The evil at which the statute is aimed is not driving or occupying a vehicle in which there is a pistol but rather the carrying (possession) of a pistol concealed on or about one's person or, whether or not so concealed, in any vehicle.

The statute is aimed at the secreting of firearms and contemplates two distinct situations: the carrying of a pistol "concealed on or about the person" and the carrying of a pistol in "a vehicle". The offender is the person who is responsible for the secreting of the firearm on or about his person or for placing it in a vehicle. The statute does not subject a person to liability for merely being the driver or an occupant of a vehicle when someone else has possession of the pistol in the vehicle.

Any other interpretation would differentiate in an irrational manner between defendants charged under the statute. If the defendant is caught outside the vehicle, the people must show possession to establish "carrying". If he is within the vehicle his knowledgeable presence alone suffices to establish "carrying".

I agree that the statute requires a looser nexus in the sense that "in a vehicle" serves as a proxy for concealment "on or about the person".

Possession of a pistol within an automobile generally creates the

## B

The dissenting opinion states:

"The first and third of the five quoted paragraphs set forth the charge in the language of the statute which clearly indicates that the principal element, in fact the gravamen, of the crime is carrying a pistol in a vehicle operated by the defendant. The second quoted paragraph particularly emphasizes the carrying element on the charge in such a way that the jury could not fail to understand the importance and necessity of the carrying element."

The first and third paragraphs[4] of the instruc-

same dangers as concealment within the jacket of a person who is walking down the street. The passenger compartment of an automobile is limited in size and a pistol contained within it is easily accessible to its occupants. In most instances, it is as if the pistol were located upon the person or about him. These correspondences suggest that conditioning responsibility upon the possession of the pistol in an automobile is functionally equivalent to conditioning responsibility on possessing a concealed pistol on or about the person.

I would disagree if what is meant by looser nexus is that a person carries a pistol by merely driving a car knowing that there is a pistol in it. While "in a vehicle" substitutes for "concealed on or about his person", "carrying" is still an element. The looser nexus implies nothing about "carrying". "Carrying" means possession, whether the weapon is carried on or about the person or in a car.

The Legislature, in eliminating the need for concealment on or about the person and treating the vehicle much as a man's pocket or a woman's purse (a depository where the gun is readily within reach), did not eliminate the necessity for proving which person or persons within the vehicle is or are responsible for the gun being there and therefore may properly be found guilty of possessing or "carrying" it or of aiding and abetting such possession or carrying.

The dissenting opinion appears to be concerned with problems of proof which confront a prosecutor when more than one person is in a vehicle where a pistol is found. Those problems (see fn 11 of the opinion of the Court discussing cases decided in other jurisdictions) do not justify reading the word "carrying" out of the statute or giving the word "carrying" differing meanings in the same statute.

Lastly, I disagree with the suggestion that the statute was intended to operate differently depending upon whether the person charged with carrying a pistol in a vehicle is the driver or an occupant. The statute makes no such distinction, speaking without differentiation of an "operator or occupant".

[4] The dissenting opinion quotes two paragraphs of the instructions

tions quoted in the dissenting opinion do not iden-
tify "carrying" as an *element.* They state rather
that Butler is *charged* with carrying a pistol. It
was not indicated at all—let alone "clearly"—that
the "principal element, in fact the gravamen, of
the crime is carrying".

The second quoted paragraph, which simply re-
peats that the defendant was *charged* with "carry-
ing", does not "particularly emphasize the carry-
ing element". Neither the first nor the second
paragraph makes any reference to what are the
*elements* of the offense or, indeed, to the concept
of elements.

The concept that there are elements of an of-
fense is not alluded to in the first and second
paragraphs. The jury is composed of laymen. The
notion that there are elements of an offense is
probably a new concept to jurors. That concept
does not appear in the instructions until many
paragraphs later. Then for the first time the judge,
in the fourth and fifth quoted paragraphs, speaks
of the elements of the offense.

not quoted in Part I of the opinion of the Court:

"Now, in this case the defendant, Belton Butler, is charged in an
information brought by the people of the State of Michigan which
alleges that on the 28th day of January, 1976, at John R and
Chandler, City of Highland Park, the defendant did then and there
*carry* a pistol, to wit, a .32 caliber, blue steel revolver, seven shot
Regent, serial G06594, in a certain vehicle operated or occupied by
the defendant, to wit, a Chrysler Imperial bearing 1975 Michigan
license number TRK 367, at the above location, which was not a
dwelling house or place of business or other land possessed by said
defendant without a license to carry the pistol contrary to the statute.

"In other words, the charge is carrying a pistol in a motor vehicle,
and to this charge the defendant has pleaded not guilty. Of course, it
is up to you, ladies and gentlemen, out of these instructions to resolve
that issue."

In the one and one-half pages intervening between these two
paragraphs and the third paragraph quoted in Part I of the opinion of
the Court the judge discussed the presumption of innocence, the
burden of proof, and, at some length, reasonable doubt.

He then returned to the charged offense in the instant case and
instructed the jury as set forth in the three paragraphs quoted in
Part I of the opinion of the Court.

The judge states that the elements are "very simple": (i) a pistol, (ii) a motor vehicle owned or operated by the defendant, and (iii) knowledge that the pistol was in the vehicle. The judge then proceeds to repeat those elements two more times and concludes: "Those are the elements of the offense. So it is not a complicated offense in any way, as you can see."

The dissenting opinion does not discuss the fourth and fifth quoted paragraphs which alone describe the elements of the offense. The conclusion in that opinion that the instructions as a whole clearly informed the jury of all the elements is asserted without acknowledgment that the only *elements* identified as such to the jury did not include "carrying".

Nowhere did the judge identify or describe as an element, let alone "clearly indicate", what the dissenting opinion correctly characterizes as the "principal element", the "gravamen" of the offense. Nowhere did the judge emphasize "the carrying element on the charge in such a way that the jury could not fail to understand the importance and necessity of the carrying element."

The statement that jury instructions, "although not as artful as they might have been, adequately informed the jury of the elements of the crime", may be appropriate in a case where the judge covers the elements in language which, although lacking in elegance, is nevertheless informative. The problem here is not style but substance: The total omission of the carrying element (by thrice omitting it) and its exclusion with the sign-off statement ("Those are the elements of the offense").

The judge treated "carrying" as a shorthand description (like robbery, breaking and entering,

arson and murder) of the offense with which the defendant was charged. How could a lay jury be regarded as "adequately" informed if an experienced and knowledgeable judge either did not understand or in a lapse forgot to charge the jury on the principal element, the gravamen of the offense?

Suppose a defendant is charged with breaking and entering. The judge instructs the jury early in his instructions that the defendant is charged with breaking and entering, and, as here, proceeds to discuss the presumption of innocence, the burden of proof, and reasonable doubt. He then purports to describe the elements of the offense; he says nothing further about breaking or entering, only that the charged offense requires, as an element, proof of intent to commit a felony. Such an instruction would be misleading and inaccurate even though the judge had told the jury that the defendant was *charged* with breaking and entering.

It is apparent, upon reading the dissenting opinion, that defining what constitutes "carrying" presents serious and difficult business, but it hardly can be said that this is a "simple" or an "uncomplicated" matter.

Butler's trial counsel asked for an instruction on "carrying". The problem that confronts the trial and appellate benches of making intelligible to the lay jury what is meant by "carrying" cannot be solved by permitting a trial judge to ignore the issue and in effect read this troublesome word out of the statute.

WILLIAMS, J. *(dissenting).* There are two issues in this case. The first is whether a jury properly rendered a verdict of guilty under MCL 750.227; MSA 28.424, for carrying "a pistol concealed on or

about his person, or, whether concealed or otherwise, in a vehicle operated or occupied by him". The jury must have found beyond a reasonable doubt that there was a pistol on the floor of the vehicle a short distance from the defendant owner who had been operating the vehicle and who knew the pistol was in the car. The second issue is whether the trial judge gave adequate jury instructions covering the elements of the offense. We hold that the facts showed a violation of the statute and that the trial judge did not err in giving his instructions. We affirm the Court of Appeals affirmation of the trial court.

## I. FACTS

Belton Butler and a companion, Victoria McLoud, were arrested after two police officers stopped Butler's automobile as he was driving in Highland Park, Michigan. The police had earlier received a report linking Butler's automobile to an armed robbery and rape committed the previous day and had placed the automobile under surveillance. An officer testified that after the police stopped the automobile and Butler and his companion complied with an order to leave the automobile, he noticed a revolver resting on the automobile's floorboard a short distance from the driver's seat. Butler and his companion were arrested and charged with carrying a concealed weapon.

In the Butler trial, the officer testified that a witness told him that the gun found in the automobile looked "like the gun that he [Butler] had" on the day before his arrest. The prosecution also introduced a statement made by Butler in which he admitted that he knew the revolver was in the automobile but asserted that his companion, Victo-

ria McLoud, had brought the gun into the automobile and that "she was the one who had the gun".

At the trial, Butler, the only witness called by the defense, denied knowledge of the gun's presence in the automobile or any previous possession of the gun.

The Court of Appeals affirmed in an unpublished opinion. We affirm.

## II. CARRYING IN A VEHICLE OPERATED

A fair inference from the facts recited above is that the police stopped a car carrying the defendant owner-driver, his passenger companion, and a gun on the floor a short distance from the driver. Since the car belonged to defendant and he was driving it, one must logically conclude that he was carrying the pistol in the vehicle just as one must conclude that a man driving a car carrying a load of hay was carrying a load of hay in the vehicle.

However, the mere act of carrying a pistol in a vehicle is not sufficient to come within the proscription of the statute. There must be criminal intent. Therefore, the defendant must have knowingly carried the pistol in the vehicle. Defendant testified that he had no knowledge that the gun was in the vehicle and that he had not had prior possession of it. However, the prosecution produced evidence that the gun looked like the gun that defendant had had in his possession the day before and that defendant had admitted that the gun was in the vehicle. From the jury's verdict, it is obvious that it believed the prosecution.

We must conclude, then, that the operative facts

in this case are that the defendant knowingly carried a pistol in his vehicle which he was operating. There is no question but that in driving the car carrying the pistol defendant participated in carrying the pistol. We must conclude further that such facts come within the proscription of MCL 750.227; MSA 28.424 providing that a person shall be guilty of a felony "who shall carry a pistol * * * in a vehicle operated * * * by him".

This conclusion is reinforced by close examination of the pertinent statutory language:

"a person who shall carry a pistol concealed on or about his person, or, whether concealed or otherwise, in a vehicle operated or occupied by him".

The Legislature must be credited with careful and purposeful use of language. The contrasting wordage of the clause "concealed on or about his person" with the succeeding clause "whether concealed or otherwise, in a vehicle operated or occupied by him" is therefore significant. The Legislature, by the choice of these words, was clearly contrasting "concealed" with "concealed or otherwise", and "on or about his person" with "in a vehicle". This contrast clearly indicates a much looser nexus between the defendant in the "in a vehicle" phrase than in the "on or about his person" phrase. However, in the instant case, the facts establish a substantial nexus, because the pistol was in the car on the floorboard between defendant's feet.

This decision is obviously limited to the person who "operated" the vehicle. We are not required to, and we do not, decide whether the proscription of the statute under these facts would apply to a

person who "occupied" the vehicle other than as
the operator.

## III. CORRECTNESS OF JURY INSTRUCTIONS

The second issue in this case is the correctness
of the jury instructions. The applicable instruc-
tions follow:

"Now, in this case the defendant, Belton Butler, is
*charged* in an information brought by the people of the
State of Michigan which alleges that on the 28th day of
January, 1976, at John R and Chandler, City of High-
land Park, the defendant did then and there *carry* a
pistol, to wit, a .32 caliber, blue steel revolver, seven
shot Regent, serial G06594, in a certain vehicle oper-
ated or occupied by the defendant, to wit, a Chrysler
Imperial bearing 1975 Michigan license number TRK
367, at the above location, which was not a dwelling
house or place of business or other land possessed by
said defendant without a license to *carry* the pistol
contrary to the statute.

*"In other words, the charge is carrying* a pistol in a
motor vehicle, and to this charge the defendant has
pleaded not guilty. Of course it is up to you, ladies and
gentlemen, out of these instructions to resolve that
issue.

\*   \*   \*

"Now, the defendant in this case is *charged* under a
statute or a law of the State of Michigan which says
insofar as pertinent to this case that a person who *shall
carry* a pistol whether concealed or otherwise in a
vehicle operated or occupied by him, except in his
dwelling house or place of business or other land pos-
sessed by him without a license *to carry* the pistol as
provided by law shall be guilty of a felony.

"In other words, the elements of the offense, which
are very simple, are, number one, that there was a
pistol in the motor vehicle which was owned or oper-
ated by the defendant, and second, that the defendant
knew there was a pistol in the motor vehicle.

"It does not have to be concealed in the vehicle. The elements are the existence of the pistol in the vehicle owned or operated by the defendant, and the knowledge of the defendant that the pistol was in the vehicle. In other words, it must be proved, each of those elements must be proved beyond a reasonable doubt that the pistol was in the vehicle, that the vehicle was owned or operated or occupied by the defendant, and the third, that the defendant knew the pistol was in the vehicle. Those are the elements of the offense. So it is not a complicated offense in any way, as you can see." (Emphasis added.)

Defendant objects that the judge did not instruct the jury on all the elements of the crime of MCL 750.227; MSA 28.424 in that he failed to specify that he had to carry a pistol in a vehicle. This argument is based on the fact the word "carry" does not appear in the last two paragraphs of the charge quoted above. Defendant's argument is accurate as far as it goes, but it fails to recognize the instructions as a whole. The first and third of the five quoted paragraphs set forth the charge in the language of the statute which clearly indicates that the principal element, in fact the gravamen, of the crime is carrying a pistol in a vehicle operated by the defendant. The second quoted paragraph particularly emphasizes the carrying element on the charge in such a way that the jury could not fail to understand the importance and necessity of the carrying element.

As a consequence, since the instructions included a reading of the charge with the applicable statutory language, *People v Kruper,* 340 Mich 114, 122-123; 64 NW2d 629 (1954), and emphasized the carrying element in the first, second and third paragraphs, and because the instructions when taken as a whole clearly informed the jury of all the elements, *People v Dye,* 356 Mich 271, 279; 96

NW2d 788 (1959), *cert den* 361 US 935; 80 S Ct 367; 4 L Ed 2d 355 (1960), we cannot hold that the trial judge and Court of Appeals erred.

### CONCLUSION

We hold that the facts that the defendant drove his car in which a pistol was carried and that he knew that the pistol was in the car come within the proscription of MCL 750.277; MSA 28.424. We further hold that the trial court did not err in instructing the jury. The instructions, although not as artful as they might have been, adequately informed the jury of the elements of the crime.

COLEMAN, C.J., concurred with WILLIAMS, J.