# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ANDRE DELOREN THORNHILL,

        Defendant-Appellant.

UNPUBLISHED
September 13, 2016

No. 326865
Wayne Circuit Court
LC Nos. 14-007939-FC

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ANDRE DELOREN THORNHILL,

        Defendant-Appellant.

No. 326866
Wayne Circuit Court
LC No. 14-008093-FH

Before: CAVANAGH, P.J., and SAAD and FORT HOOD, JJ.

PER CURIAM.

Defendant was charged with several offenses in two separate cases that were consolidated for trial. In LC No. 14-008093-FH, a jury convicted defendant of first-degree home invasion, MCL 750.110a(2), assault and battery, MCL 750.81(1), and domestic violence, MCL 750.81(2). Defendant was sentenced to a prison term of 4 to 20 years for the home-invasion conviction, and to 93 days in jail (time served) for each misdemeanor conviction. In LC No. 14-007939-FC, the same jury convicted defendant of assault with intent to commit murder, MCL 750.83, carrying a concealed weapon (CCW), MCL 750.227(2), and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced to concurrent prison terms of 12 to 20 years for the assault conviction and 1½ to 5 years for the CCW conviction, to be served consecutive to a two-year term of imprisonment for the felony-firearm conviction. Defendant appeals as of right in each case. We affirm in both appeals.

-1-

## I. BACKGROUND FACTS

Defendant and Shannon Holmes were involved in an on-again, off-again relationship. When they were together, Holmes stayed with defendant. When they were separated, Holmes stayed with her sister, who lived down the street from defendant.

On August 24, 2014, defendant and Holmes got into an argument that escalated into a physical fight. Holmes left defendant's home and went to her sister's house. Defendant followed her there and they continued to fight. Holmes's sister came to her door and told Holmes to come inside. Defendant then confronted Holmes's sister, who stepped inside her house and defendant followed her inside. As defendant was about to hit her, she moved and defendant struck her daughter instead. Defendant and his brother both testified that defendant stood on the sister's porch, but did not enter her house.

On August 27, 2014, Holmes went out with a close friend, Ali Little. Holmes and Little testified that defendant followed them in his car and caught up to them at a red light, pulling next to the passenger side of the van where Holmes was seated. Defendant said threatening words and then pulled out a large semi-automatic handgun and pointed it at Holmes. She tried to duck into the back of the van, but defendant fired shots that broke the passenger's side window and a bullet struck Holmes in the knee. Little sped off and defendant followed while continuing to shoot at the van. Eventually Little took Holmes to the hospital where she had surgery to remove the bullet. Defendant testified that it was Little and Holmes who followed him in his car, and fired a gun at him.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant challenges the sufficiency of the evidence in support of his convictions. "A defendant need not take any action to preserve a challenge to the sufficiency of the evidence." *People v Williams*, 294 Mich App 461, 471; 811 NW2d 88 (2011). However, the issue as it pertains to the home invasion conviction "is not a true sufficiency claim" because it is based on an issue of statutory construction. See *People v Hill*, 257 Mich App 126, 144; 667 NW2d 78 (2003). And the statutory construction issue has not been preserved because it was not raised, addressed, and decided in the trial court. See *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). Accordingly, that aspect of the issue is reviewed for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

"Due process requires that, to sustain a conviction, the evidence must show guilt beyond a reasonable doubt." *People v Harverson*, 291 Mich App 171, 175; 804 NW2d 757 (2010). In a sufficiency challenge, we view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proved beyond a reasonable doubt. *People v Hoffman*, 225 Mich App 103, 111; 570 NW2d 146 (1997). Circumstantial evidence and reasonable inferences drawn therefrom are sufficient to prove the elements of a crime. *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000) (citation omitted). "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002).

The elements of assault with intent to commit murder are "(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *Hoffman*, 225 Mich App at 111. The "[s]pecific intent to kill is the only form of malice which supports the conviction of assault with intent to commit murder." *People v Fyda*, 288 Mich App 446, 454; 793 NW2d 712 (2010) (citation omitted). "The intent to kill may be proved by inference from any facts in evidence" and "minimal circumstantial evidence is sufficient." *People v McRunels*, 237 Mich App 168, 181; 603 NW2d 95 (1999). The intent to kill may be inferred from the defendant's statements and conduct, his use of a lethal weapon, and the nature and extent of the victim's injuries. *People v Mills*, 450 Mich 61, 71; 537 NW2d 909, modified 450 Mich 1212 (1995); *People v Guy Taylor*, 422 Mich 554, 567-568; 375 NW2d 1 (1985). The intentional discharge of a firearm at someone within range, under circumstances that did not justify, excuse, or mitigate the crime, is sufficient to prove assault with intent to commit murder. *People v Lipps*, 167 Mich App 99, 105; 421 NW2d 586 (1988); *People v Johnson*, 54 Mich App 303, 304; 220 NW2d 705 (1974).

The offense of CCW requires that the defendant "carry" a pistol, "concealed or otherwise," in a vehicle he is operating or occupying. MCL 750.227(2). The offense of felony-firearm requires that defendant carry or possess a firearm while committing or attempting to commit another felony. MCL 750.227b(1). "Carrying" is similar to possession and denotes intentional control or dominion over the weapon. *People v Butler*, 413 Mich 377, 390 n 11; 319 NW2d 540 (1982).

Holmes and Little testified that they were followed by someone in a white Chrysler 300, the same type of car defendant drove. Holmes testified that when the vehicle pulled alongside Little's van, she recognized defendant as the driver. Holmes and defendant had an on-and-off relationship that was then in the off-again phase. Both Holmes and Little testified that the driver said something indicating that he had a relationship with Holmes and Little testified that he recognized the voice as that of defendant. Holmes testified that defendant was holding a gun and pointed it at her. Both she and Little testified that they heard the sound of a gun being fired. Little took off with defendant in pursuit and more shots were fired. Witnesses testified to seeing a fresh bullet hole in the passenger door of Little's van and a bullet was recovered from Holmes's knee. This evidence, if believed, was sufficient to prove that defendant carried or possessed a gun and used it to assault Holmes with the intent to murder her. While defendant takes issue with Holmes's credibility, "[w]itness credibility and the weight accorded to evidence is a question for the jury," *People v McGhee*, 268 Mich App 600, 624; 709 NW2d 595 (2005), and "[t]his Court will not interfere with the role of the trier of fact of determining the weight of the evidence or the credibility of witnesses." *Hill*, 257 Mich App at 141.

The issue as stated includes a claim regarding the sufficiency of the evidence in support of the misdemeanor convictions of assault and battery and domestic violence. However, defendant offers no argument as to why the evidence at trial was insufficient to prove those offenses. A defendant abandons an issue when he "fail[s] to provide any analysis in the text of his brief on appeal." *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009). Accordingly, defendant has abandoned any challenge to the sufficiency of the evidence as it relates to his misdemeanor convictions.

Defendant's challenge to the home-invasion charge centers on the meaning of the term "dwelling." The offense of first-degree home invasion requires that the defendant break and enter "a dwelling," or that he enter "a dwelling" without permission. MCL 750.110a(2). Defendant argues that he did not enter "a dwelling" because he only went through the main door of Holmes's sister's duplex into an entry hall that provided access to the two residential units, each of which had a separate entry door.

The rules of statutory construction require the courts to give effect to the Legislature's intent. This Court should first look to the specific statutory language to determine the intent of the Legislature, which is presumed to intend the meaning that the statute plainly expresses. *People v Loper*, 299 Mich App 451, 464; 830 NW2d 836 (2013). "If the plain and ordinary meaning of the language is clear, judicial construction is not required or permitted." *Id*. "Where a statute supplies its own glossary, courts may not import any other interpretation but must apply the meaning of the terms as expressly defined." *People v Schultz*, 246 Mich App 695, 703; 635 NW2d 491 (2001).

The home-invasion statute defines the term "dwelling" as "a structure or shelter that is used permanently or temporarily as a place of abode, including an appurtenant structure attached to that structure or shelter." MCL 750.110a(1)(a). This Court recently held that in light of this definition, "the term 'dwelling' as used in MCL 750.110a(2) refers to the whole structure or shelter used as a place of residence," not to "the component parts of the structure." *People v Bush*, ___ Mich App ___; ___ NW2d ___ (2016) (Docket No. 326658), slip op at 7 (footnote omitted). Because the two units of the duplex were part of a single structure, the entry hall provided access to both units, and the family used both units as their place of residence, defendant entered "a dwelling" when he stepped inside the entry hall of the duplex. Thus, his sufficiency challenge in this regard is without merit.

## III. SENTENCING

Defendant next argues that his sentences for assault with intent to commit murder and first-degree home invasion constitute cruel and/or unusual punishment in light of his age, his lack of prior convictions, and other redeeming qualities. This issue has not been preserved for appeal because "[d]efendant did not advance a claim below that his sentences were unconstitutionally cruel or unusual." *People v Bowling*, 299 Mich App 552, 557; 830 NW2d 800 (2013). Accordingly, this issue is reviewed for plain error affecting defendant's substantial rights. *Id*.

The United States Constitution prohibits "cruel and unusual punishments," US Const, Am VIII, while its Michigan counterpart prohibits "cruel or unusual punishment." Const 1963, art 1, § 16. This includes "a prohibition on grossly disproportionate sentences." *People v Bullock*, 440 Mich 15, 32; 485 NW2d 866 (1992).

Defendant's minimum sentences for assault with intent to commit murder and first-degree home invasion were squarely within the minimum sentence ranges dictated by the sentencing guidelines. "[A] sentence within the guidelines range is presumptively proportionate, and a sentence that is proportionate is not cruel or unusual punishment." *People v Powell*, 278 Mich App 318, 323; 750 NW2d 607 (2008) (citations omitted). Moreover, the constitutional

concept of "proportionality" is distinct from the nonconstitutional "principle of proportionality" mandated for discretionary sentences under *People v Milbourn*, 435 Mich 630, 650; 461 NW2d 1 (1990). *Bullock*, 440 Mich at 34 n 17. While the purpose of the sentencing guidelines "is to facilitate proportionate sentences," *People v Smith*, 482 Mich 292, 305; 754 NW2d 284 (2008), the constitutional concept "concerns whether the punishment concededly chosen or authorized by the Legislature is so grossly disproportionate as to be unconstitutionally 'cruel or unusual.' " *Bullock*, 440 Mich at 34-35 n 17. In determining whether a punishment is cruel or unusual, this Court looks at the gravity of the offense and the harshness of the penalty, compares the penalty to that imposed for other crimes in this state and to the penalty imposed for the same offense in other states, and considers the goal of rehabilitation. *People v Launsburry*, 217 Mich App 358, 363; 551 NW2d 460 (1996).

Defendant has not compared his sentences to the penalties imposed for other crimes in this state apart from those authorizing life without parole, which are hardly comparable, or to the penalties for the same offenses in other states. Defendant has not provided any basis for overcoming the presumptive proportionality of his guidelines sentences. Therefore, he has not shown plain error.

## IV. DEFENDANT'S STANDARD 4 BRIEF

Defendant raises additional claims of ineffective assistance of counsel and prosecutorial misconduct in a pro se supplemental brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4.

## A. INEFFECTIVE ASSISTANCE OF COUNSEL

Because defendant did not raise his ineffective assistance of counsel claims in a motion for a new trial or request for an evidentiary hearing in the trial court, our review of those claims is limited to mistakes apparent from the record. See *People v Lane*, 308 Mich App 38, 68; 862 NW2d 446 (2014). The general rule is that effective assistance of counsel is presumed and the defendant bears a heavy burden of proving otherwise. *People v Eloby (After Remand)*, 215 Mich App 472, 476; 547 NW2d 48 (1996). To establish a claim of ineffective assistance of counsel, defendant must "show both that counsel's performance fell below objective standards of reasonableness, and that it is reasonably probable that the results of the proceeding would have been different had it not been for counsel's error." *People v Frazier*, 478 Mich 231, 243; 733 NW2d 713 (2007).

## 1. CALLING WITNESSES

Defendant first contends that counsel was ineffective for failing to call certain witnesses to testify. "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy. This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *People v Rockey*, 237 Mich App 74, 76-77; 601 NW2d 887 (1999) (citations omitted). "Ineffective assistance of counsel may be established by the failure to call witnesses only if the failure deprives defendant of a substantial defense." *People v Julian*, 171 Mich App 153, 159; 429 NW2d 615 (1988) (footnote omitted). "A substantial defense is

one that might have made a difference in the outcome of the trial." *People v Kelly*, 186 Mich App 524, 526; 465 NW2d 569 (1990).

The lower court file in LC No. 14-008093-FH contains a document entitled "Defense Witnesses." The document includes the names of five people: defendant, defendant's brother Eric, Mia Parker, Alicia Cooke, and Shoton Merrit. Defense counsel called defendant and his brother to testify, but did not call the other named witnesses. Because there is nothing in the record to indicate what testimony Parker, Cooke, and Merrit would have offered if called, the record does not support a finding that counsel's failure to call them deprived defendant of a substantial defense.

## 2. INSPECTING LITTLE'S VAN

The record indicates that Little's van was impounded for processing. If it was processed, either the evidence technician did not issue a report or the police officers assigned to the case made no attempt to obtain the technician's report. Defendant contends that counsel should have inspected the van himself.

It is counsel's duty to make an independent examination of the facts and circumstances involved in the matter, and to pursue all leads relevant to the issues. *People v Grant*, 470 Mich 477, 486-487 (KELLY, J.), 498 (TAYLOR, J.); 684 NW2d 686 (2004). The failure to conduct a reasonable investigation can constitute ineffective assistance of counsel. *McGhee*, 268 Mich App at 626. "In order to overcome the presumption of sound trial strategy, the defendant must show that his counsel's failure to prepare for trial resulted in counsel's ignorance of, and hence failure to present, valuable evidence that would have substantially benefited the defendant." *People v Bass (On Rehearing)*, 223 Mich App 241, 253; 581 NW2d 1 (1997), vacated in part on other grounds 457 Mich 866 (1998).

The testimony indicated that defendant fired multiple shots at Little's van. However, only one bullet hole was discovered in the vehicle and the bullet lodged in Holmes's knee, where it remained until it was surgically removed. The record thus indicates that the van did not contain any evidence pertinent to the August 27 incident, much less evidence favorable to the defense. Therefore, assuming that counsel did not inspect the van, the record does not support a finding that defendant was prejudiced by that omission.

## 3. ADMISSION OF THE BULLET

Defendant contends that the trial court erred in admitting the bullet into evidence because the prosecutor did not establish that the doctor who removed the bullet from Holmes's knee delivered it to a government official, and counsel was ineffective for failing to request a curative instruction regarding inadmissible evidence.

The record demonstrates that defense counsel repeatedly challenged the admissibility of the bullet. The trial court sustained counsel's initial objections on foundational grounds, but ultimately admitted the evidence. Defendant has not offered a cogent legal argument properly supported by legal authority regarding the propriety of the trial court's ruling, and thus his contention that the trial court erred in admitting the evidence is deemed abandoned. See *Payne*, 285 Mich App at 188; *People v Watson*, 245 Mich App 572, 587; 629 NW2d 411 (2001).

Absent a showing that the bullet was erroneously admitted into evidence, defendant's claim of ineffective assistance of counsel must fail; counsel is not ineffective because he did not succeed in excluding evidence that was properly admitted. Further, because defendant has not shown that the evidence was inadmissible, he was not entitled to a "curative instruction" regarding testimony about inadmissible evidence, and "defense counsel is not ineffective for failing to pursue a futile motion." *People v Brown*, 279 Mich App 116, 142; 755 NW2d 664 (2008).

## 4. IMPEACHING HOLMES

Defendant contends that counsel was ineffective because he did not impeach Holmes with certain inconsistencies between her trial testimony and prior statements.

"A witness can be impeached by the use of prior inconsistent statements." *People v Patton*, 66 Mich App 118, 121; 238 NW2d 545 (1975). Decisions regarding how to cross-examine and impeach witnesses are matters of trial strategy. *In re Ayres*, 239 Mich App 8, 23; 608 NW2d 132 (1999); *People v McFadden*, 159 Mich App 796, 800; 407 NW2d 78 (1987). Where counsel cross-examines and impeaches a witness, the failure to impeach her on all contradictory aspects of her prior statements and trial testimony does not render counsel ineffective. *Id*. However, "[c]ounsel may provide ineffective assistance if counsel unreasonably fails to develop the defendant's defenses by adequately impeaching the witnesses against the defendant." *Lane*, 308 Mich App at 68.

The record shows that counsel impeached Holmes on certain points. For example, she testified that she planned to smoke marijuana when she met with Little, but apparently did not mention that fact before the grand jury. Also, Holmes testified that she referred to Little as her son, but told the police he was her cousin. Although Holmes initially testified that she did not believe defendant was driving the car that followed Little's van, she testified on cross-examination that she assumed it was defendant based on subsequent events. Counsel then got Holmes to admit that she told the grand jury that she "really didn't know" who was driving the car. Holmes's grand jury testimony and police report(s) are not in evidence, so the record does not show that they conflicted with her testimony in any other respects. Further, defendant has not shown that the other points of impeachment, such as where Holmes went during the August 24 foot chase and whether "she attempted to run inside of her home" would have aided his defense that he followed Holmes around, but did not chase her and did not enter her sister's house. Thus, the record does not support a finding that counsel was ineffective.

## 5. CLOSING ARGUMENT

Defendant contends that counsel was ineffective for not pointing out instances where one witness's testimony conflicted with that of another witness, or with documentary evidence.

The decision whether to give a closing argument is a matter of trial strategy, *Ayres*, 239 Mich App at 23, as is the decision concerning what evidence to highlight during closing argument. *In re Rogers*, 160 Mich App 500, 505-506; 409 NW2d 486 (1987).

Defense counsel argued that the witnesses' accounts of the August 24 incident did not make sense and did not support a finding that defendant committed the crimes charged. For example, defendant had no reason to slap Holmes after she was kind enough to come downstairs

and open the door for him and the 911 report that "Sister and boyfriend fighting outside the [location]" showed that "[t]here's no home invasion. There's nobody inside," a conclusion supported by defendant's brother's testimony and the fact that defendant was not arrested. Thus, it was more likely that defendant's account—that he followed Holmes down the street because she took his phone and that he returned home after he got it back—was what really happened. The crux of counsel's argument regarding the August 27 incident was that Holmes invented it to punish defendant for breaking up with her and, while her testimony was largely supported by Little, he was not a credible witness. While counsel did not deny that Holmes was shot, he argued that the evidence did not support a finding that defendant shot her. While he could have raised the matters defendant cites—such as whether Holmes lived with defendant or with her sister or both, the exact nature of Holmes and Little's relationship, whether Holmes's sister woke up on her own or whether her daughter woke her, and the time the bullet was recovered and the name of the doctor who removed it—they really were not germane to the argument presented. Defendant has not shown that counsel made a serious error by failing to raise these points.

## B. PROSECUTORIAL MISCONDUCT

"The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial (i.e., whether prejudice resulted)." *People v Abraham*, 256 Mich App 265, 272; 662 NW2d 836 (2003). Because defendant did not object to the challenged conduct, his claims of prosecutorial misconduct are unpreserved and review is limited to plain error affecting his substantial rights. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010).

## 1. FALSE TESTIMONY

Defendant contends that because Holmes's trial testimony conflicted with her police statement and grand jury testimony, it must have been false and thus the prosecutor committed misconduct by introducing it.

A "prosecutor may not knowingly use false testimony to obtain a conviction." *People v Lester*, 232 Mich App 262, 277; 591 NW2d 267 (1998), overruled in part on other grounds by *People v Chenault*, 495 Mich 142, 146; 845 NW2d 731 (2014). "[A] conviction obtained through the knowing use of perjured testimony offends a defendant's due process protections guaranteed under the Fourteenth Amendment." *People v Aceval*, 282 Mich App 379, 389; 764 NW2d 285 (2009). However, "not every contradiction is material and the prosecutor need not correct every instance of mistaken or inaccurate testimony." *People v Smith*, 498 Mich 466, 476; 870 NW2d 299 (2015) (quotation marks and citation omitted). Rather, "it is the *effect* of the prosecutor's failure to correct false testimony that is the crucial inquiry for due process purposes." *Id.* (emphasis in original, quotation marks and citation omitted). The defendant is only entitled to relief "if the tainted evidence is material to the defendant's guilt or punishment." *Aceval*, 282 Mich App at 389.

Defendant has not shown that Holmes actually testified falsely about anything, much less that the prosecutor knew that she testified falsely. The record shows only that her accounts were not completely consistent with each telling in certain minor respects, and that defense counsel brought those inconsistencies out during cross-examination. A defendant is not entitled to relief when the prosecutor does not attempt to conceal contradictions in a witness's testimony and

-8-

defense counsel is afforded a sufficient opportunity to impeach the witness's credibility with her prior statements. *People v Parker*, 230 Mich App 677, 690; 584 NW2d 753 (1998).

## 2. CLOSING ARGUMENT

Defendant's remaining argument is difficult to understand, but appears to relate to alleged misstatements of fact during the prosecutor's closing argument. "Although a prosecutor may not argue facts not in evidence or mischaracterize the evidence presented, the prosecutor may argue reasonable inferences from the evidence." *Watson*, 245 Mich App at 588.

The officer who observed Holmes's bullet wound demonstrated its location by pointing to his own knee. The prosecutor noted for the record that the officer "has been pointing to the inner part of his thigh." Defendant takes issue with that comment because it was allegedly inaccurate. However, defense counsel confirmed through questioning that the officer was pointing to "the inner part of my knee or the inside of my thigh" on his left leg. Because the prosecutor's comment was accurate, there was no misconduct.

Holmes testified that she and Little were at Linwood and Davison when defendant fired a shot into the van and shattered the passenger's side window. An officer went to that location and found some "broken glass possibly from a vehicle" in the eastbound lane of Davison. From such evidence, it was reasonable to infer that the glass found at the intersection was from the shattered window of Little's van. Therefore, the prosecutor's argument, which suggested that the glass was from Little's van, was not improper.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Henry William Saad
/s/ Karen M. Fort Hood