PEOPLE v EMERY

Docket No. 79136. Submitted January 8, 1986, at Grand Rapids.—
      Decided April 9, 1986.

    Daniel V. Emery was convicted of carrying a pistol in a motor
      vehicle and of carrying a pistol on or about his person following
      a jury trial in St. Joseph Circuit Court, James P. Noecker, J.
      The proofs at trial showed that the defendant, in making
      certain threats to a woman outside of Sturgis, Michigan, lifted
      his coat to reveal a pistol tucked into the waistband of his
      pants. The proofs further showed that some 45 minutes later
      and 20 miles away the police stopped the automobile in which
      defendant was riding as a passenger in the rear seat. A search
      of the automobile revealed the presence of a loaded pistol in a
      box which was on the rear shelf between defendant and the
      other rear seat passenger. Defendant admitted that earlier in
      the day he had loaded the pistol and placed it in the box, but
      he denied placing the box in the automobile and indicated that
      he was not aware of the box's presence in the automobile.
      Defendant appealed, alleging that conviction for both carrying
      a weapon on or about his person and carrying a weapon in a
      motor vehicle constituted double jeopardy, that it was error for
      the prosecution to cross-examine defendant's non-alibi witness
      about her failure to come forward prior to trial with her
      information and to comment on the same during closing argu-
      ment, and that there was insufficient evidence to find that
      defendant, while in the vehicle, was "carrying" the weapon
      within the meaning of the statute. *Held:*

    1. Defendant's conviction for carrying a pistol on or about his
      person was based upon his carrying a pistol in his waistband
      near Sturgis, while his conviction for carrying a pistol in a
      motor vehicle was the result of the finding of a pistol in the

REFERENCES

Am Jur 2d, Criminal Law §§ 183, 243-320.

Am Jur 2d, Weapons and Firearms §§ 3, 8-23, 26, 27.

What constitutes "dangerous weapon" under statutes prohibiting
      the carrying of dangerous weapons in motor vehicles. 2 ALR4th
      1342.

See also the annotations in the ALR3d/4th Quick Index under
      Carrying Weapons; Former Jeopardy.

vehicle in which defendant was riding. Since these events were both geographically and temporally separated, they constituted separate events for which separate charges could be brought. The fact that the same weapon might have been involved in each event does not make the bringing of separate charges and the convicting of separate offenses violative of the constitutional prohibition against double jeopardy.

2. The prosecutor properly impeached defendant's non-alibi witness during cross-examination on the basis of her failure to come forward prior to trial with the information she testified to at trial, since the information was of such a nature that a witness would have a natural tendency to come forward with it prior to trial. Since that cross-examination was proper, the prosecutor properly commented upon such failure to come foward during closing arguments.

3. There was sufficient evidence to support a finding that defendant was "carrying", within the meaning of the statute, the pistol found in the box in the automobile in which defendant was riding. The evidence that the pistol was in a box next to defendant, that defendant admitted loading the pistol and putting it in the box, that the box was in plain view of the defendant and that defendant had been observed a short while earlier with a pistol on his person provides an adequate basis upon which the jury could conclude that the pistol was within defendant's control and that he was thus unlawfully "carrying" a weapon in a motor vehicle.

Affirmed.

1. CONSTITUTIONAL LAW — DOUBLE JEOPARDY — MULTIPLE PUNISH-
MENT.

A person may properly be convicted of both carrying a pistol in a vehicle and carrying a pistol concealed on or about his person where the acts giving rise to the two charges were temporally separated by more than half an hour and geographically by more than 20 miles, since under those circumstances there is no double jeopardy violation because two separate criminal acts are involved.

2. WEAPONS — CARRYING A CONCEALED WEAPON.

The purpose of the statute making criminal the carrying a concealed weapon is to protect quarreling persons from being injured by an adversary who might suddenly draw and use a concealed weapon without notice (MCL 750.227; MSA 28.424).

3. WEAPONS — CARRYING A WEAPON IN AN AUTOMOBILE.

To support a conviction for carrying a weapon in an automobile

the prosecution must show (1) the presence of a weapon in a vehicle operated or occupied by the defendant, (2) that the defendant knew or was aware of its presence, and (3) that he was "carrying" it (MCL 750.227; MSA 28.424).

4. Criminal Law — Witnesses — Non-Alibi Witnesses — Impeachment.

It is proper for a prosecutor to cross-examine a non-alibi defense witness concerning the witness's failure to come forward prior to trial with the information which is testified to at trial where the witness possesses information of such a nature that the witness would have a natural tendency to come forward with it prior to trial.

5. Weapons — Carrying a Weapon in an Automobile.

Proof of the "carrying" element of the crime of carrying a weapon in an automobile is essential for conviction; that element may not automatically be inferred from evidence that the defendant had knowledge of the weapon's presence in the vehicle (MCL 750.227; MSA 28.424).

6. Weapons — Carrying a Weapon in an Automobile.

There is sufficient evidence to support a jury finding that a defendant was carrying a weapon in a motor vehicle within the meaning of the carrying a weapon in a vehicle statute where there are proofs that the weapon was in a box next to the defendant, that the defendant had cleaned and placed the weapon in the box earlier in the day, that the box was plainly visible and had been in plain view for some time, and that the defendant had been observed a short while earlier with a firearm in the waistband of his pants, since the jury could reasonably infer that the weapon was under the control of the defendant and thus was being carried by him within the meaning of the statute (MCL 750.227; MSA 28.424).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Robert Cares,* Prosecuting Attorney, and *Michael G. Wade,* Assistant Prosecuting Attorney, for the people.

*O'Malley & Welty* (by *William D. Welty),* for defendant.

Before: R. M. Maher, P.J., and Allen and R. R. Lamb,* JJ.

Per Curiam. On November 22, 1983, defendant was convicted by a jury of carrying a pistol in a vehicle, MCL 750.227; MSA 28.424, and carrying a pistol concealed on or about his person, *id.* Sentenced to eight months in the county jail and two years probation, defendant appeals his conviction as of right, raising three issues. We affirm.

At approximately 7:00 p.m. on February 24, 1983, Connie Ritter noticed that a car was moving slowly in front of her house and, upon inspection, discovered a man standing at the end of her driveway. Ritter was apprehensive since, earlier in the day, a number of her relatives had found paper stickers stating "the Ku Klux Klan is watching you" pasted to their homes. Ritter inquired whether the man needed assistance in finding someone, to which he responded he would find the man himself. The car then circled back and the man entered the vehicle. Ritter's daughter copied the license plate number.

A few minutes later, the defendant and Vivian Varner, an aunt of Ritter's husband, appeared at Ritter's front door. Varner handed Ritter one of the Ku Klux Klan stickers and then told Ritter that she would be sorry if Varner received another call from a reporter. The record is unclear as to the nature of the inquiries made by reporters and as to Ritter's connection with these telephone calls. In any event, Ritter informed Varner that she was the one who would be sorry, at which point the defendant raised his jacket, revealing a handgun tucked into his pants. He then told Ritter that she was the one who would be sorry. After a further exchange of words, Ritter shut the door

* Circuit judge, sitting on the Court of Appeals by assignment.

and called the police. This incident gave rise to the charge against defendant for carrying a concealed weapon on or about his person.

The preceding incident took place in Sturgis, Michigan. At 7:48 p.m., police officers stopped the car occupied by Varner and defendant in Three Rivers, Michigan. Varner's husband owned the vehicle and was driving, while Varner was riding as a passenger in the front seat. Defendant and David Gosser were situated in the rear seat. On the back window ledge of the vehicle between these two passengers the police discovered a styrofoam box which contained a .44-caliber cap and ball pistol.[1] The box was made for storing firearms and also contained powder, plastic caps, a screwdriver, an extra ball, some wadding and a jackknife.

Defendant admitted visiting Ritter but denied that he displayed a handgun. Further, he admitted that he had loaded the pistol found in the automobile earlier in the day and had placed it in the styrofoam box. However, defendant denied that he had put the box in the car and maintained that he was not aware of its presence in the vehicle. Finding the pistol in the vehicle gave rise to the second charge of carrying a pistol in a vehicle.

Defendant first maintains that his convictions for carrying a pistol concealed on or about his person and carrying a pistol in a vehicle violated the double jeopardy clauses of the United States Constitution, Am V, and the Michigan Constitution, art 1, § 15, since he received multiple punishments for the "same offense". See *People v Robideau*, 419 Mich 458, 468; 355 NW2d 592 (1984), quoting *North Carolina v Pierce*, 394 US 711, 717; 89 S Ct 2072; 23 L Ed 2d 656 (1969). Defendant

---

[1] It should be noted that Varner's husband consented to the search of the vehicle.

claims that there is no discernible legislative intent to impose multiple punishments for "the criminal offense". Thus, he goes on to argue that carrying a concealed weapon on his person was a lesser included offense of carrying a weapon in a vehicle and that these two crimes were therefore the same offense under *Blockburger v United States*, 284 US 299, 304; 52 S Ct 180; 76 L Ed 306 (1932),[2] and violative of the federal double jeopardy clause. Alternatively, defendant argues that the Michigan double jeopardy clause was violated, maintaining that the separate convictions were based on common proofs which established a single criminal act.[3]

We find it unnecessary to address defendant's double jeopardy arguments in depth because we believe that his initial premise is flawed. Specifi-

---

[2] *Blockburger, supra,* was criticized by the Michigan Supreme Court in *Robideau, supra,* wherein the propriety of the continued use of this test was questioned in light of inconsistent applications of the test by the United States Supreme Court and other courts.

[3] In support of defendant's double jeopardy argument based on Michigan law, he cites cases which pre-date *Robideau, supra. Robideau* stands for the proposition that, where the facts surrounding a crime would support convictions under two distinct statutory provisions, the question of whether double jeopardy exists for the reason of multiple punishments depends on whether the Legislature intended that the crime warrant multiple punishments. Noting that legislative intent could be determined by a variety of traditional means, the Court nonetheless set forth two general principles: (1) where two statutes prohibit violations of the same social norms, it can generally be concluded that the Legislature did not intend multiple punishments; and (2) where one statute incorporates most of the elements of a base statute, building on the base statute by adding aggravating factors and imposing a greater penalty, there is evidence of a legislative intent not to punish a defendant under both statutes. While the Supreme Court did not expressly rule out the common proofs test advanced by defendant as a means for determining legislative intent, its holding at the very least indicates that the test has a precarious status. The Court concluded that a defendant could be doubly punished for first-degree criminal sexual conduct as well as the predicate offense which served to elevate the charge to first-degree criminal sexual conduct, despite the fact that the defendant would necessarily be guilty of the predicate offense if the factfinder found him guilty of first-degree criminal sexual conduct.

cally, he maintains that, because he was allegedly carrying the same concealed weapon on his person and subsequently in the vehicle,[4] he can be found guilty of only one unseverable wrongful act. If we could accept defendant's premise, we would be inclined to agree that defendant was receiving an unwarranted multiple punishment under state and federal law. If, for example, defendant had the gun concealed on his person while he was in the automobile and this single event resulted in convictions on both charges, the criminal acts would be unseverable and a double jeopardy violation would exist. Such a situation would constitute only one instance of "concealment". However, for the following reasons we believe that the facts of this case support a finding that defendant committed two separate criminal acts and that he was appropriately punished for each offense, even though both acts might be construed as having occurred during a single criminal transaction.[5]

The purpose of the criminal statute at issue is to protect quarreling persons from being injured by an adversary who might suddenly draw and use a concealed weapon without notice. *People v Shelton,* 93 Mich App 782, 785; 286 NW2d 922 (1979). In *People v Wakeford,* 418 Mich 95; 341 NW2d 68 (1983), the Court found that the primary purpose of the armed robbery statute was the protection of

---

[4] Although the record gives rise to an inference that the same weapon was involved in both crimes, this fact was not clearly established at trial. Moreover, in *People v Sturgis,* 130 Mich App 54, 65; 343 NW2d 230 (1983), *lv gtd* 422 Mich 857 (1985), the Court rejected the notion that use of the same gun in three severable crimes would trigger double jeopardy concerns.

[5] Even if it were determined that both crimes were performed during a single transaction, the right not to be put in jeopardy twice would only require that all charges arising out of the transaction be tried in a single proceeding. It does not prohibit charging and convicting the defendant of multiple offenses where the defendant committed more than one crime during the course of the single transaction. *People v White,* 390 Mich 245, 255; 212 NW2d 222 (1973).

persons and, therefore, the appropriate unit of prosecution for armed robbery was the number of persons assaulted and robbed. The Court thus concluded that there was no double jeopardy violation in convicting the defendant on two counts of armed robbery where there were two victims in a single holdup.

We acknowledge that, although both the armed robbery statute and the concealed weapon statute are designed to protect persons, there is a significant distinction between the two statutes. in that with the concealed weapons statute there need not be any overt act toward the person of another in order for the offense to be consummated. Nonetheless, we find the analogy to the armed robbery statute useful, since the concern with both statutes is with protecting people. Therefore, we believe that a concealed weapons charge should focus more on the persons put at risk than on the fact that only one weapon was concealed over an extended period of time. Since, in the instant case, Ritter was put at risk during the first offense while the police officers who approached the vehicle were put at risk during the second offense, we find that the facts militate in favor of a finding that these were two severable crimes.

In addition, we find significant the time and place considerations as well as the fact that both offenses were complete in and of themselves, as there were no common elements. The first offense occurred at approximately 7:00 p.m. in Sturgis and was complete before the defendant had ever left Ritter's premises. Ritter's testimony was sufficient to establish that defendant was carrying a weapon and that it was concealed on his person. See *Shelton, supra,* p 785. Proof of this crime was in no way dependent on whether the defendant subsequently carried a weapon in a motor vehicle.

Likewise, a conviction for the second offense in no way required that the elements of the first offense be established. Rather, the prosecutor was required to establish that a weapon was present in a vehicle operated or occupied by the defendant, that defendant knew or was aware of its presence, and that defendant was "carrying" the weapon. *People v Courier,* 122 Mich App 88, 90; 332 NW2d 421 (1982). The elements of this second offense could not be established merely by proving the elements of the first offense.[6] Moreover this crime took place in a different locality, Three Rivers, and occurred approximately 45 minutes after the first offense was completed. Depending on the route taken, Three Rivers is some 21 to 23 miles northwest of Sturgis.

Finally, we believe that the Legislature may have had an additional purpose for proscribing the carrying of guns in motor vehicles which was of a more specific nature than the general purpose of the statute. Specifically, the Legislature likely wanted to protect police officers from surprise attacks by persons in automobiles who are stopped in the course of the officer's performance of his duties. This additional purpose provides some indication that the Legislature would view the earlier concealment on the defendant's person and the subsequent carrying of the weapon in a motor vehicle as two separate crimes. For all these reasons, we do not believe that defendant's convic-

---

[6] Although defendant maintains that the element of "carrying" the weapon in the vehicle was established in part by an inference drawn from the fact that he was the individual "carrying" the weapon earlier in the evening, we do not find this significant. To convict the defendant of both crimes, the jury had to conclude that he was "carrying" the weapon on both occasions. That the jury may have relied in part on an inference drawn from evidence presented to prove one crime in order to find that an element of another crime was established poses, at best, an evidentiary issue, but not a double jeopardy problem.

tions constituted a violation of either the federal or the state double jeopardy clause.

Defendant next argues that the prosecutor improperly impeached Varner, a non-alibi witness, during cross-examination and made improper comments during closing arguments by making reference to Varner's refusal to talk to the police. Although there is a split in this Court with respect to the propriety of such impeachment and comments with respect to an alibi witness, see *People v Grisham,* 125 Mich App 280, 287; 335 NW2d 680 (1983), and cases cited therein, a prosecutor may cross-examine a non-alibi defense witness regarding his failure to come forward prior to trial with the information testified to at trial *if* the information is of such a nature that the witness would have a natural tendency to come forward with it prior to trial. *People v Perkins,* 141 Mich App 186, 196; 366 NW2d 94 (1985), *lv den* 423 Mich 858 (1985).

Varner testified that at no time during the day in question did she see a firearm in the defendant's waistband. If this fact were true, it would have tended to exonerate the defendant on the charge of carrying a concealed weapon on his person. For the following reasons, we find that this information, which would have provided a complete defense to this crime if it were believed, was of such a nature that Varner would have had a natural tendency to present it prior to trial. First, Varner and the defendant had a close relationship, and thus it is reasonable to believe that she would have exerted some effort to provide authorities with information which would have tended to exculpate defendant. Moreover, since Varner was present during the time that defendant allegedly exhibited the firearm to Ritter, she would have had personal knowledge of these events. In addi-

tion, Varner's presence during this episode tended to implicate her in wrongdoing and thus, if she had come forward with the evidence, she might have exonerated herself as well as the defendant. Finally, this is not a situation where the witness had to take the initiative to talk to authorities, as the police came to her home in order to discuss the incident. Under these circumstances, we do not believe that any error occurred by allowing the prosecutor to impeach Varner with evidence that she refused to talk to the police about the incident.

Defendant's final contention is that there was insufficient evidence to support a finding that defendant "carried" the weapon in the motor vehicle. Proof of this element is essential to a conviction for carrying a weapon in an automobile and may not automatically be inferred from evidence that defendant had knowledge of the weapon's presence in the vehicle. *Courier, supra.* However, in *People v Butler,* 413 Mich 377, 390 fn 11; 319 NW2d 540 (1982), the defendant's awareness of the weapon was cited as one factor which has in the past been considered in determining whether there is sufficient circumstantial evidence to substantiate the element of "carrying". Additional factors which have been considered include: (1) the accessibility or proximity of the weapon to the person of the defendant; (2) the defendant's possession of items which connect him to the weapon, such as ammunition; (3) the defendant's ownership or operation of the vehicle; and (4) the length of time during which the defendant drove or occupied the vehicle. *Id.*

In *Butler, supra,* the Court indicated that, by listing these factors, it was not adopting a test for determining when sufficient evidence of "carrying" was presented. Rather, the Court stated that the contours of this element would remain unsettled

and that resolution of the issue would await a future case where the issue was directly presented to the Court. Further, the Court emphasized that it was merely listing factors which had been considered in the past and that it was not expressing any opinion with regard to the importance or relevancy of these factors. Given the Court's position with respect to the factors which had been considered in the past, it is apparent that a trial court need not find that there was evidence presented on each of the five factors in order to determine that the circumstantial evidence is sufficient to substantiate the element of "carrying". Moreover, the Court implicitly provided that other factors may be considered where relevant.

In the present case, we believe that the combination of the factors recited in *Butler,* plus an additional factor, support a finding that the element of "carrying" was sufficiently established. First, defendant was seated in the rear seat on the right-hand side of the vehicle with the styrofoam box on the back window sill directly next to him. Defendant's proximity to the gun therefore provides some circumstantial evidence that he was the individual "carrying" the gun. The fact that another passenger was just as close to the gun as defendant tends to affect the weight that might be given this factor, but that fact does not preclude its consideration.

Second, defendant testified that he had loaded the gun earlier in the day, had then put it in the styrofoam box and had placed the box on the headboard of Varner's bed. Although defendant denied having put the box in the vehicle, it would be unreasonable to conclude that defendant was unaware of its presence, since the styrofoam box was in such close proximity to him and was in his plain view and since he should have recognized the

box as the container into which he had put the gun earlier in the day. The reasonableness of this conclusion further emerges when a third *Butler* factor is considered, *i.e.,* the length of time during which defendant occupied the vehicle. Defendant testified that he and the others had left his home at approximately 2:30 or 3:00 p.m. and indicated that they had not returned to the house prior to appearing at Ritter's home. Thus, it appears that defendant was in the vehicle with the styrofoam box in plain view for approximately four hours. It is difficult to believe that defendant would not have become aware of its presence during this time period.

Finally, Ritter testified that defendant had the firearm in his waistband when he visited her home approximately 45 minutes before the gun was discovered in the vehicle. The defendant's earlier connection with the firearm provides a reasonable inference that defendant was the person in the vehicle who exerted control over the gun and who was "carrying" the gun. Such an inference is further substantiated by evidence that defendant had loaded the gun earlier in the day, had accompanied Varner when she purchased the gun approximately five days earlier, had occupied the car approximately six times while the gun was inside the car, and had put the gun in the car on at least one prior occasion. Based on all of this evidence, we believe that the jury reasonably could have concluded that defendant was guilty of carrying a pistol in a vehicle.

Defendant maintains that the trial court improperly instructed the jury to consider the nature and extent of defendant's previous contact with the firearm in determining whether he "carried" the weapon at the time in question. He argues that this was not relevant or probative with re-

spect to whether the defendant was "carrying" the weapon at this specific time. We believe that such evidence would have some tendency to make the existence of the "carrying" requirement more or less probable than it would be without the evidence. Accordingly, the evidence was relevant under MRE 401 and it was not error to so instruct the jury.

Affirmed.