*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MARIO DEANGELO AMISON,

Defendant-Appellant.

UNPUBLISHED
February 21, 2019

No. 337349
Wayne Circuit Court
LC No. 16-009059-FC

Before: CAMERON, P.J., and RONAYNE KRAUSE and TUKEL, JJ.

RONAYNE KRAUSE, J. *(dissenting)*.

I respectfully dissent. The majority properly observes that we must give considerable deference to the trial court's findings of fact at a bench trial. However, that deference is not absolute. Furthermore, the deference given to a trial court's assessments of witness credibility is considerably greater than the deference given to the trial court's assessment of objective evidence. Finally, an assessment of witnesses' credibility does not immunize the rest of the record evidence from review. I believe the extent of the majority's deference in this matter is unwarranted. I would reverse defendant's convictions.

## I. FACTS AND STANDARD OF REVIEW

The majority accurately recounts the pertinent facts, and I need not repeat them. We review the record de novo when evaluating a claim of insufficient evidence following a bench trial. *People v Kanaan*, 278 Mich App 594, 618; 751 NW2d 57 (2008). All record evidence must be viewed in the "light most favorable to the prosecutor." *People v Robinson*, 475 Mich 1, 5; 715 NW2d 44 (2006). However, "a reviewing court must consider not whether there was *any* evidence to support the conviction but whether there was sufficient evidence to justify a *rational* trier of fact in finding guilt beyond a reasonable doubt." *People v Wolfe*, 440 Mich 508, 513-514; 489 NW2d 748 (1992) (emphasis added) (quotation omitted). Accordingly, "[t]he doctrine [requiring proof of guilt beyond a reasonable doubt] requires more than simply a trial ritual. A doctrine establishing so fundamental a substantive constitutional standard must also require that the factfinder will rationally apply that standard to the facts in evidence." *Id.* at 514, quoting *Jackson v Virginia*, 443 US 307, 316-317; 99 S Ct 2781; 61 L Ed 2d 560 (1979).

Evidence need not be direct to support a conviction. "Circumstantial evidence and the reasonable inferences that arise from the evidence" may satisfactorily establish actual or constructive possession. *People v Brown*, 279 Mich App 116, 136-137; 755 NW2d 664 (2008); *People v Barbee*, 325 Mich App 1, 12-13; ___ NW2d ___ (2018). However, the finder of fact may not engage in speculation. *People v Bailey*, 451 Mich 657, 673-675, 681-682; 549 NW2d 325 (1996). The finder of fact may weigh the evidence, and we must affirm if the evidence favorable to conviction "fairly tended to establish the charge made." *People v Howard*, 50 Mich 239, 242-243; 15 NW 101 (1883). However, if "we find a total want of evidence upon any essential point," we must reverse. *Id.*

Generally, the trier of fact is entitled to great deference regarding any evaluation of witnesses' credibilities. *McGonegal v McGonegal*, 46 Mich 66, 67; 8 NW 724 (1881); *Anderson v City of Bessemer City, NC*, 470 US 564, 574; 105 S Ct 1504, 1511-1512; 84 L Ed 2d 518 (1985). Nevertheless, a lone judge in a bench trial is not entitled to the same degree of deference as the determinations of a jury.[1] *Schneider v Pomerville*, 348 Mich 49, 54; 81 NW2d 405 (1957). Furthermore, "deference does not imply abandonment or abdication of judicial review." *Miller-El v Cockrell*, 537 US 322, 340; 123 S Ct 1029; 154 L Ed 2d 931 (2003).

## II. ANALYSIS – FELON IN POSSESSION

There are two essential elements necessary to convict a defendant of felon in possession under MCL 750.224f: "(1) the defendant is a felon who possessed a firearm (2) before his right to do so was formally restored under MCL 28.424." *People v Bass*, 317 Mich App 241, 267-268; 893 NW2d 140 (2016). The parties stipulated that defendant was a convicted felon ineligible to possess a firearm. Therefore, the only question of fact at issue is whether defendant possessed the revolver.

As an initial matter, the majority accurately notes that the trial court found the testimony of defendant and Percy to lack credibility. As discussed, that is a determination to which we must defer. However, "doubt about credibility is not a substitute for evidence of guilt." *Wolfe*, 440 Mich at 519. A finding that certain testimony is not credible permits the trier of fact to disregard that testimony, but it does *not* permit the trier of fact to invent contradictory testimony. In the absence of affirmative evidence, the trier of fact may not engage in speculation. *Bailey*, 451 Mich at 673-675. Without the testimony of defendant and Percy, there is *no* evidence of what transpired inside the car during the chase, other than what can be reasonably inferred from the video recording. Notably, none of the officers in pursuit even noticed that anything, let alone a gun, had been thrown from the vehicle. Kapanowski's testimony, credible as the trial court found it, was based on his observations of the video recording, not his own personal observations

---

[1] The majority accurately recites the standard of review. However, the majority misunderstands the point that the collective wisdom and everyday experience of twelve average members of the community has always been regarded as more reliable and valuable than that of a single individual. See, e.g., *Duncan v Louisiana*, 391 US 145, 155-158; 88 S Ct 1444; 20 L Ed 2d 491 (1968); *Hana Financial, Inc v Hana Bank*, ___ US ___, ___; 135 S Ct 907, 911; 190 L Ed 2d 800 (2015).

of anything being thrown out of the vehicle. Therefore, the evidence in support of defendant's conviction must come, directly or indirectly, only from the video recording itself.

Specifically, only a handful of frames from the video have even arguable probative value. I have exported them directly from the source video, without editing, and reproduce them here:



 

The majority contends that these exported frames "give a poor representation of what the video actually conveys." I find that conclusion perplexing. A video recording is, literally, nothing more than a collection of static images played back in a sequence. These frames are, in fact, *exactly* what the video "actually conveys," but in a format that permits meaningful analysis. I agree completely with the majority's observation that they are "not very enlightening," but disagree that they would convey more simply by being put into motion.

Some of the trial court's conclusions are reasonable inferences from the video. First, as Percy's car passes through the scene, a small dark object appears to be travelling toward a building. The object appears to strike the building and rebound into the street. Because the revolver was found approximately where the object landed, it is reasonable to infer that the dark object in the video was the revolver. Secondly, I agree with the majority that the trial court did not clearly err in finding that the gun rebounded off the wall "at a considerable height." Third, the vehicle does not appear to swerve as it passes through the scene, although the few frames in which it is visible disclose little about its path before and after. The remainder of the majority's conclusions rest on speculative beliefs about what is plausible, based on what the majority calls "common sense."

Physically, there are only two possible ways the gun could have travelled from the car, through the arc depicted on the video, and to the place in the street where it was found.[2] Either Percy threw the gun out of the driver's window up and over the car,[3] or defendant threw the gun out of the passenger window in a high arc. The majority fairly outlines the physical contortions

---

[2] The majority seemingly does not appreciate that the gun would naturally rebound some considerable distance simply because it was travelling at the same speed as the car. Furthermore, at no point have I suggested that the gun was merely "dropped."

[3] I appreciate that Percy testified he "slung" the gun out of the passenger-side window. The trier of fact may choose to believe a portion of a witness's testimony and reject another portion. M Crim JI 3.6(5); *Howard*, 50 Mich at 242-243. However, the trial court apparently rejected the entirety of Percy's testimony. As noted, that rejection leaves a complete absence of evidence as to how the gun left the vehicle. It does not constitute affirmative evidence to the contrary.

necessary for either Percy or defendant to make such a throw. Notably, *both* options would have required the thrower to stick an arm out the window. The video is of low quality, but the passenger side of the vehicle faces the camera and no arm is apparently visible as being outside of any window.[4] Even disregarding that aspect of the video, given the fact that the only testimony regarding the events inside of the vehicle is of no value, we are simply left with pure guesswork on how the weapon exited the vehicle. I do not, as the majority suggests, affirmatively conclude that Percy threw the gun. Rather, the record affords no way to draw *any* reasonable conclusions about how the gun exited the car that are more likely than any other possibility.

The central problem with the majority's analysis is that none of us are ballistics experts, mechanical engineers, well-experienced in throwing objects out of speeding cars, or in any way qualified to have any *reliable* opinion at all about what the video shows. We have not been presented with any indication that the trial judge or Kapanowski enjoyed any special expertise that we lack. And thus we cross the line from permissible inferences into outright guesswork by people who have no foundation whatsoever for engaging in that guesswork. It is entirely proper for judges to consider commonplace, everyday experience. However, *if* any conclusions can be drawn from the video, inexperienced non-experts such as ourselves have no business drawing them.

In the absence of any non-speculative way to resolve which of the two possibilities occurred, it is impossible to determine beyond a reasonable doubt that defendant was the person who threw the gun from the car. The evidence is, at best, equivocal. Consequently, I would reverse defendant's conviction for felon in possession of a firearm.

### III. ANALYSIS – FELONY-FIREARM

The majority finds it unnecessary to specifically analyze the remainder of defendant's convictions. Because I would find the evidence of possession insufficient, I do find it necessary to analyze the remaining convictions. To be found guilty of a felony-firearm, a defendant must have possessed a firearm during the commission of, or attempt to commit, a felony. MCL 750.227b(1); *People v Goree*, 296 Mich App 293, 296; 819 NW2d 82 (2012). The predicate felony for this offense was the aforementioned felon-in-possession charge. As was true with the felon-in-possession conviction, the only question material to this appeal is whether defendant possessed the gun. For the reasons already stated above, I find that a reasonable trier of fact could not find beyond a reasonable doubt that defendant possessed the firearm at any point. Therefore, I would reverse defendant's conviction for felony-firearm.

### IV. ANALYSIS – CARRYING A CONCEALED WEAPON

---

[4] Kapanowski testified that no body part actually throwing the gun or sticking out of the car could be seen. He additionally testified that despite his belief that the gun was thrown from the passenger window, the video "isn't necessarily clear as far as whether or not it was thrown precisely from the passenger side or the driver side."

Carrying a concealed weapon in a vehicle requires proof that: (1) a weapon was present in a vehicle operated or occupied by defendant, (2) defendant knew or was aware of the weapon's presence, and (3) defendant was "carrying" the weapon. MCL 750.227(2); *People v Nimeth*, 236 Mich App 616, 622; 601 NW2d 393 (1999).[5] The statute is not intended to punish a defendant's mere presence in a car where a pistol was found. *People v Smith*, 21 Mich App 717, 722; 176 NW2d 430 (1970). Rather, its purpose is to punish those who actually carry the weapon. *Id*. Therefore, a defendant's knowledge of a firearm does not establish, by itself, that defendant carried it. *Id*. If it becomes clear that the defendant intentionally participated in the carrying of the weapon, the carrying element will be satisfied. *Id*. at 723.

There is no dispute that the gun was present in the vehicle occupied by defendant. For the sake of discussion, I will presume that defendant was aware of the gun. On that presumption, a rational trier of fact could find the first two elements of CCW proved beyond a reasonable doubt. As discussed, there is no evidence that defendant ever took actual, physical possession of the revolver. However, possession may be constructive "if there is proximity to the article together with indicia of control." *People v Hill*, 433 Mich 464, 470; 446 NW2d 140 (1989). The carrying element may be established by demonstrating knowledge of the firearm and any of several additional factors, including:

> "(1) the accessibility or proximity of the weapon to the person of the defendant; (2) the defendant's possession of items which connect him to the weapon, such as ammunition; (3) the defendant's ownership or operation of the vehicle; and (4) the length of time during which the defendant drove or occupied the vehicle. *People v Emery*, 150 Mich App 657, 667; 389 NW2d 472 (1986).

This Court has observed "that the general purpose behind the concealed weapon statute is to prevent the possibility that quarrelling persons would suddenly draw a hidden weapon without notice to other persons." *Nimeth*, 236 Mich App at 621 (cleaned up). It follows that if a weapon is not realistically accessible to a person, knowledge of the weapon does not establish possession. As noted, a defendant's knowledge in the absence of any additional factors "should not lead *automatically* to a conclusion that he was 'carrying' the pistol." *Smith*, 21 Mich App at 722 (emphasis in original).

As already discussed, with the testimonies of Percy and defendant disregarded, there is *no* evidence of what transpired inside Percy's vehicle during the chase. See *Wolfe*, 440 Mich at 519. Therefore, it would require speculation to conclude that there was more than a mere possibility that defendant could have possessed the revolver at any point, whether actually or constructively. Therefore, I would also reverse defendant's CCW conviction.

V. CONCLUSION

---

[5] Although not relevant in this case, I note for clarity that MCL 750.227(2) specifically requires the defendant to be "without a license to carry the pistol as provided by law," and MCL 750.231a provides several further exceptions to the ordinary operation of MCL 750.227(2).

The evidence that defendant actually or constructively possessed the gun at any time is, at most, entirely equivocal. Consequently, it is not possible for a rational trier of fact to find beyond a reasonable doubt that defendant possessed the gun. Because possession is an essential element of each of defendant's convictions, they should all be reversed.

/s/ Amy Ronayne Krause