*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JUAN CABRERO,

        Defendant-Appellant.

UNPUBLISHED
July 22, 2025
9:21 AM

No. 370761
Oceana Circuit Court
LC No. 2023-015634-FH

Before: FEENEY, P.J., and BORRELLO and LETICA, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction of possession of methamphetamine, MCL 333.7403(2)(b)(*i*). The trial court sentenced defendant to serve 16 months to 10 years in prison. We affirm.

## I. FACTS

In April 2022, Oceana police officers stopped a vehicle; defendant was a front-seat passenger. Police arrested the registrant and driver of the vehicle, Lazaro Madrigal, who had two outstanding warrants. An officer asked defendant for his identification, but defendant refused to provide any information. The police informed defendant that they were towing the vehicle and defendant was free to leave. After defendant left, the police conducted an inventory search of the vehicle and had a K-9 dog walk around it. The dog alerted to the presence of contraband at the "passenger door seat." Two baggies of methamphetamine were ultimately discovered: the first baggie was located in a pair of pants on the passenger-side floorboard; and the second baggie was located in a cigarette-lighter port, also on the passenger side. Defendant's name was printed on a tag inside the pants' waistband, which were a size 34 by 32 inches. Notably, officers confirmed that Madrigal wore size 38 pants. Defendant was arrested for possession of methamphetamine four months later. Defendant was convicted and sentenced, as stated earlier. Defendant now appeals.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that there was insufficient evidence to find that he constructively possessed the methamphetamine. We disagree.

## A. PRESERVATION AND STANDARD OF REVIEW

"A defendant need not take any action to preserve a challenge to the sufficiency of the evidence." *People v Williams*, 294 Mich App 461, 471; 811 NW2d 88 (2011). "Due process requires that, to sustain a conviction, the evidence must show guilt beyond a reasonable doubt." *People v Harverson*, 291 Mich App 171, 175; 804 NW2d 757 (2010). "Challenges to the sufficiency of the evidence are reviewed de novo." *People v Xun Wang*, 505 Mich 239, 251; 952 NW2d 334 (2020). In analyzing a claim of insufficient evidence, we review "the evidence in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt." *Id*. (quotation marks and citation omitted). "[A] reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). "Circumstantial evidence and reasonable inferences arising from the evidence can constitute satisfactory proof of the elements of a crime." *Harverson*, 291 Mich App at 175 (quotation marks and citation omitted). Although circumstantial evidence may sustain a criminal conviction, "the circumstantial proof must facilitate reasonable inferences of causation, not mere speculation." *Xun Wang*, 505 Mich at 251 (quotation marks and citation omitted).

## B. ANALYSIS

"To obtain a conviction under MCL 333.7403(2)(b), the prosecution must prove that the defendant 'knowingly or intentionally possessed' methamphetamine." *People v Baham*, 321 Mich App 228, 247; 909 NW2d 836 (2017). "Possession may be actual or constructive, joint or exclusive. The essential issue is whether the defendant exercised dominion or control over the substance." *Id*. at 247-248 (quotation marks and citations omitted).

Because defendant was not found in physical possession of methamphetamine, it was the prosecution's theory that defendant constructively possessed it. Constructive possession, i.e., that the defendant knew of, and had control over, contraband, may not be established by a person's mere presence at a location where the contraband is found. *People v Wolfe*, 440 Mich 508, 520; 489 NW2d 748 (1992), amended 441 Mich 1201; 489 NW2d 748 (1992). Rather, an additional connection between the defendant and the contraband must exist, from which a fact-finder may reasonably infer that the defendant exercised dominion and control over the substance. *Id*. at 521-522.

We conclude that the evidence, viewed in a light most favorable to the prosecution, provided the jury with a reasonable basis for inferring that defendant had control over the contraband found in the pants and cigarette-lighter port. First, there was evidence that defendant was in control of the area where the drugs were found. Although defendant did not own the vehicle, the police observed that he was a front-seat passenger immediately before the vehicle was seized. The drugs were found in areas of the vehicle that a passenger typically occupies, and therefore normally controls: the passenger floorboard and passenger-side area where the cigarette-lighter port was located. The jury could therefore reasonably infer that the contraband found in these areas was known to, and under the control of, defendant. The evidence also suggested that

the pants in which the contraband was found belonged to defendant, given that, not only were they found at defendant's feet, but also, they were two sizes too small for Madrigal, and defendant's name was printed in the waistband. The inference that the pants belonged to defendant further permitted the jury to reasonably infer that defendant had both knowledge of, and control over the methamphetamine in those pants.

Defendant argues that his name on the pants alone was insufficient to support his conviction because Kaitlyn Lynn, defendant's ex-girlfriend, testified that she donated defendant's work clothes to people in need, namely Madrigal, because defendant obtained so many new work clothes each year. In making this argument, however, defendant overlooks the totality of the evidence supporting his conviction; therefore, this argument is not an effective challenge to the sufficiency of the evidence. Defendant also suggests that the state's failure to produce both the pants and Madrigal for examination left the jury to speculate. But the fact that the prosecution did not produce certain evidence does not render the evidence that was produced insufficient for purposes of supporting a conviction. "Even in a case relying on circumstantial evidence, the prosecution need not negate every reasonable theory consistent with the defendant's innocence, but need merely introduce evidence sufficient to convince a reasonable jury in the face of whatever contradictory evidence the defendant may provide." *People v Hardiman*, 466 Mich 417, 423-424; 646 NW2d 158 (2002) (quotation marks and citation omitted).

For these reasons, we conclude that there was sufficient evidence for the jury to reasonably infer that defendant exercised dominion and control over the methamphetamine found in the passenger areas of the vehicle. See *Wolfe*, 440 Mich at 520-522.

## III. PROSECUTORIAL ERROR

Defendant further argues that the prosecution engaged in misconduct by: (1) raising improper questions to Lynn, and (2) vouching for a police officer's testimony. We disagree.

### A. PRESERVATION AND STANDARD OF REVIEW

Defense counsel did not object to the complained-of instances of prosecutorial error in the trial court; therefore, these claims are not preserved for appellate review. See *People v Barber*, 255 Mich App 288, 296; 659 NW2d 674 (2003). Unpreserved claims of prosecutorial misconduct are reviewed for plain error. *People v Lane*, 308 Mich App 38, 62; 862 NW2d 446 (2014). "Under the plain error rule, [a defendant] must show that (1) error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected a substantial right of the defendant." *People v Pipes*, 475 Mich 267, 279; 715 NW2d 290 (2006). "Generally, the third factor requires a showing of prejudice—that the error affected the outcome of the trial proceedings." *Id*. Even if a defendant shows "plain error that affected a substantial right, reversal is only warranted when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings . . . ." *Id*. (quotation marks and citation omitted).

### B. ANALYSIS

"Generally, to prevail on a claim of prosecutorial misconduct, a defendant must show that he was denied a fair and impartial trial." *People v Solloway*, 316 Mich App 174, 201; 891 NW2d 255 (2016). "A prosecutor can deny a defendant his or her right to a fair trial by making improper remarks that so infect the trial with unfairness as to make the resulting conviction a denial of due process." *Lane*, 308 Mich App at 62 (quotation marks and citation omitted). "We must evaluate instances of prosecutorial misconduct on a case-by-case basis, reviewing the prosecutor's comments in context and in light of the defendant's arguments." *Id*. at 62-63.

## 1. CROSS-EXAMINATION OF LYNN

Defendant first argues that the prosecutor engaged in misconduct when, without "foundation," he "planted a false impression" that Lynn was aware of the facts of the case when she had just testified that she was not familiar with it. We disagree.

Generally, a claim of "prosecutorial misconduct cannot be predicated on good-faith efforts to admit evidence." *People v Noble*, 238 Mich App 647, 660; 608 NW2d 123 (1999). Further, the prosecutor may fairly contest the evidence the defense produces, which includes cross-examining a defense witness on any matter that bears on his or her credibility. See *People v Reid*, 233 Mich App 457, 475-478; 592 NW2d 767 (1999).

At trial, defendant offered Lynn's testimony in support of his theory that the pants with the methamphetamine belonged to Madrigal because Lynn donated defendant's jeans to Madrigal before the incident in question. The following exchange occurred during the prosecution's cross-examination of Lynn:

*Q*. When did you become aware of this case?

*A*. I only—I wasn't aware of it. I'm still not aware of exactly what happened, the whole thing. And I . . . became aware of it when [defendant] became arrested, and I still didn't know exactly everything that happened.

*Q*. When did you become aware that [defendant] was going through this process with this case?

*A*. When he got arrested for it.

\* \* \*

*Q*. Do you believe that this information [regarding donation of the jeans to Madrigal] is important that you're sharing today?

*A*. Yes. I believe that everything that I'm saying is important.

\* \* \*

*Q*. At any time did you reach out to the Oceana County Sherriff's Office to say, hey, I've got information about [the pants]?

*A.* Hm-hmm.

*Q.* Would you agree with me they have a website?

*A.* Yes.

*Q.* They have a phone that you could call?

*A.* Yeah.

*Q.* There's emergency lines you can call?

*A.* Hm-hmm.

*Q.* Okay. At any point in time did you call the sheriff's office to say, hey, this thing is going on with my ex, I have information that is important for you to have?

*A.* Never.

*Q.* Okay. My office has contact on the internet that you can reach out. Did you ever call my office?

*A.* Not that I—to give you information about this case? I don't believe so.

In our view, this exchange does not suggest that the prosecutor acted in bad faith or otherwise unfairly while cross-examining Lynn. "[A] prosecutor may cross-examine a non-alibi defense witness regarding his failure to come forward prior to trial with the information testified to at trial *if* the information is of such a nature that the witness would have a natural tendency to come forward with it prior to trial." *People v Emery*, 150 Mich App 657, 666; 389 NW2d 472 (1986). In determining whether a witness has a natural tendency to come forward with the information, the *Emery* Court considered several factors, which include: (1) whether the witness and the defendant had a close relationship, making it reasonable to believe that the witness would have exerted some effort to provide police with information that would have exculpated the defendant; (2) whether the witness was present at the crime scene, and therefore, had personal knowledge of the events; (3) whether the witness's presence implicated him in the wrongdoing; and (4) whether the witness had to take the initiative to talk to the police. *Id.* at 666-667.

In this case, Lynn was defendant's ex-girlfriend and the mother of defendant's child; therefore, her relationship with defendant makes it reasonable to believe that she would have exerted some effort to provide police with information that would have exculpated defendant. Although Lynn was not present at the crime scene and would have had to take the initiative to bring the evidence to the police's attention, her relationship with defendant supports the assertion that Lynn would have a natural tendency to come forward with any exculpatory evidence prior to

trial. See *id*. Accordingly, the prosecutor was allowed to cross-examine Lynn about her failure to come forward with the information prior to trial. See *id*. at 666.

The line of questioning in this case indicates that the prosecutor was seeking to discredit Lynn's credibility. Mainly, the prosecutor invited the jury to infer that Lynn's testimony about the pants was not believable by suggesting that, if Lynn had thought that the knowledge she had of the case was so significant, she would have reported it either to the police or the district attorney, but that she failed to do either despite knowing how to contact those offices. The exchange read as a whole does not suggest that the prosecutor created a false impression that Lynn knew the facts of the case better than she let on; instead, it simply suggests that the prosecutor questioned Lynn's credibility on the basis of her not coming forward with the exculpatory information that she had about the pants. Additionally, contrary to defendant's assertion, Lynn's testimony was not lacking a foundation because Lynn was a lay witness who testified on the basis of her personal knowledge. See MRE 602.

Because the record reflects a good-faith effort to introduce evidence impeaching Lynn's credibility, we conclude that defendant has not shown any error, plain or otherwise, in that regard. See *Reid*, 233 Mich App at 475-478.

## 2. VOUCHING

Defendant also contends that the prosecutor improperly vouched for the credibility of Sergeant Cam Hanson of the Oceana County Sherriff's Office during his rebuttal examination and again during closing argument. We disagree.

The following exchange occurred during rebuttal examination:

> *Q*. When you're processing a case involving a controlled substance, does it take some time to get charges?
>
> *A*. Yes, because it has to go to the lab first.
>
> *Q*. Okay. *Your office and my office, they want to do this right?*
>
> *A*. Yeah.
>
> *Q*. Okay. So in waiting for the labs, did it take some time from the April 20th date to get a warrant?
>
> *A*. Yes, because you have to send off the original substance. [Emphasis added.]

During closing argument, the prosecuting attorney stated as follows:

> On April 20th of 2022, in Grant Township, Oceana County, Michigan, Sgt. Hanson was involved in a traffic stop. . . . [T]he driver of the vehicle had warrants. He was arrested. He was taken away. The defendant, who was there, he was

identified. . . . He was asked to provide identification. That's just normal. He said no. He's allowed to do that, and he was allowed to leave the scene.

So now they have to tow the vehicle. So in accordance with policy and procedure, *doing it the correct way. It is undisputed that they did this the correct way.* They did the right thing, they searched the vehicle.

Right there at the defendant's feet, in the front passenger floorboard was a pair of pants. Right where the defendant was sitting. Sgt. Hanson took those pants. Inside those pants, . . . right at the [sic] his feet, all right, inside those pants was his name. Inside the pants, methamphetamine. [Emphasis added.]

Defendant appears to rely on "the maxim that the prosecutor cannot vouch for the credibility of his witnesses to the effect that he has some special knowledge concerning a witness' truthfulness." *People v Bahoda*, 448 Mich 261, 276; 531 NW2d 659 (1995). Yet, absent from the prosecutor's questions during the rebuttal examination, and statements made during closing argument, were any assertions or implications that would allow a jury to infer that the prosecution had some special knowledge that Hanson was testifying truthfully. That the police wished to conduct the investigation the "right" way, and in fact conducted the inventory search the "correct way," did not create the impression that the prosecutor personally knew that Hanson was testifying truthfully. Rather, the challenged questioning and statement related solely to police conduct, not the prosecutor's beliefs as to Hanson's veracity. Indeed, defendant fails to offer argument connecting the challenged questioning and statements to an inference that the prosecution had special knowledge of Hanson's truthfulness.

Additionally, defendant overlooks the fact that "a prosecutor may argue all the facts in evidence and all reasonable inferences arising from them, as they relate to the prosecutor's theory of the case." *Lane*, 308 Mich App at 63. Also that there is no requirement that the prosecutor "phrase arguments in the blandest of all possible terms." *People v Ullah*, 216 Mich App 669, 678; 550 NW2d 568 (1996). Given that Hanson testified that the inventory search followed departmental policy, and that there was no evidence indicating otherwise, the prosecutor properly argued that it was "undisputed" that the search was done in the "correct way." Because the prosecutor reasonably characterized the evidence, and in no way suggested that he possessed special knowledge that Hanson was testifying truthfully, there was no prosecutorial error in this regard.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant further argues that defense counsel rendered ineffective performance by failing to object to the alleged instances of prosecutorial error. We disagree.

## A. PRESERVATION AND STANDARD OF REVIEW

In this case, defendant did not move for a *Ginther*[1] hearing, which preserves a claim of ineffective assistance of counsel; therefore, this issue is not preserved. See *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020). "The question whether defense counsel performed ineffectively is a mixed question of law and fact; this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). A trial court's finding is clearly erroneous when, although there is evidence to support it, we, on the whole record, are left with a definite and firm conviction that a mistake was made. *People v Dendel*, 481 Mich 114, 130; 748 NW2d 859 (2008), amended 481 Mich 1201 (2008). "Where claims of ineffective assistance of counsel have not been preserved, our review is limited to errors apparent on the record." *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004).

## B. ANALYSIS

"To establish ineffective assistance of counsel, a defendant must show that (1) defense counsel's performance was so deficient that it fell below an objective standard of reasonableness and (2) there is a reasonable probability that defense counsel's deficient performance prejudiced the defendant." *People v Putman*, 309 Mich App 240, 247-248; 870 NW2d 593 (2015) (quotation marks and citation omitted). "A defendant was prejudiced if, but for defense counsel's errors, the result of the proceeding would have been different." *Id*. at 248 (quotation marks and citation omitted). "Effective assistance of counsel is presumed, and a defendant bears a heavy burden of proving otherwise." *Id*.

Defendant's claim of ineffective assistance of counsel is predicated on the assumption that the prosecutor engaged in misconduct, to which defense counsel did not object. But as previously discussed, the alleged errors were in fact proper instances of witness examination and closing argument. Defense counsel's failure to object to proper questioning and argument cannot constitute deficient performance. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel."). Accordingly, we reject defendant's claim of ineffective assistance.

## V. FAILURE TO PRESERVE EVIDENCE

Defendant lastly contends that he was denied a fair trial because the prosecution failed to conduct any investigation into the jeans, or to produce them at trial, despite them being a key piece of evidence that would have undermined confidence in the verdict. We disagree.

## A. PRESERVATION AND STANDARD OF REVIEW

Because defendant did not raise this claim in the trial court, this issue is not preserved. See *People v Heft*, 299 Mich App 69, 78; 829 NW2d 266 (2012). Accordingly, we review this claim for plain error. See *People v Burger*, 331 Mich App 504, 516; 953 NW2d 424 (2020).

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

-8-

# B. ANALYSIS

"A criminal defendant can demonstrate that the state violated his or her due process rights under the Fourteenth Amendment if the state, in bad faith, failed to preserve material evidence that might have exonerated the defendant." *Heft*, 299 Mich App at 79. "If the defendant cannot show bad faith or that the evidence was potentially exculpatory, the state's failure to preserve evidence does not deny the defendant due process." *Id*; see *Arizona v Youngblood*, 488 US 51, 58; 109 S Ct 333; 102 L Ed 2d 281 (1988).

On appeal, defendant has not alleged that the police or prosecution acted in bad faith by failing to investigate or produce the jeans for trial. Instead, after quoting the test for disclosure of exculpatory evidence under *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963), defendant asserts that "[g]ood faith versus bad faith" is not at issue and suggests that the inquiry is whether the "favorable evidence" could have put the case in a sufficiently different light as to undermine the guilty verdict.

Defendant confuses the law applicable to the prosecution's failure to *preserve* potentially exculpatory evidence with that applicable to the prosecution's failure to *disclose* plainly exculpatory evidence. Although bad faith is irrelevant to a *Brady* analysis, defendant has not raised a *Brady* challenge because he has not asserted that the prosecution failed to *disclose* clearly exculpatory evidence. Instead, defendant generally asserts that the jeans might have been helpful to his defense, and complains that the prosecution failed to conduct an investigation into the jeans or to produce them at trial. But, as noted, to establish a due-process violation, defendant must show that the police or prosecution acted in bad faith, and defendant makes no such allegation on appeal. Therefore, we reject this claim of error.

Affirmed.

/s/ Kathleen A. Feeney
/s/ Stephen L. Borrello
/s/ Anica Letica